COMMONWEALTH of Pennsylvania, Appellee

v.

Hope L. WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 6, 2007.
Filed Jan. 3, 2008.

**18**

Gregory D. Metrick, Mercer, for appellant.

Patrick B. Farrone, Asst. Dist. Atty., Mercer, for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, ORIE MELVIN, LALLY–GREEN, TODD, BOWES, GANTMAN, McCAFFERY, and DANIELS, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Hope L. Williams, appeals from the judgment of sentence entered in the Mercer County Court of Common Pleas, following her convictions for driving under the influence ("DUI")[1] and careless driving[2]. Specifically, Appellant asks us to determine whether the trial court erred when it denied her omnibus pre-trial suppression motion, where there was insufficient probable cause to arrest Appellant for DUI, and her incriminating statements were elicited before she was given proper *Miranda*[3] warnings. We are also asked to decide whether the court has the statutory authority to impose a sentence under the Intermediate Punishment Program ("IPP"), in light of the mandatory sentencing provisions of the DUI statute, which call for a fixed term of imprisonment. We hold, under the totality of the circumstances, there was probable cause to arrest Appellant for DUI; Appellant was not "in custody" for purposes of *Miranda* when she made incriminating statements; and the court had the statutory authority and discretion to sentence Appellant to IPP, if both Appellant and the program qualified.[4] Accordingly, we affirm.

---

1. 75 Pa.C.S.A. § 3802(a)(1).

2. 75 Pa.C.S.A. § 3714.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. *See Commonwealth v. Arest,* 734 A.2d 910 (Pa.Super.1999) (*en banc*) (holding sentence

of IPP must be pursuant to approved county intermediate punishment program). *See also* 204 Pa.Code § 303.12 (setting forth regulations and statutes that govern operation of and eligibility for county intermediate punishment programs).

¶ 2 The trial court opinion fully and correctly sets forth the relevant facts of this case as follows:

At approximately 6:12 a.m. on June 12, 2005, David R. Gregory, a police officer with Hempfield Township Police Department and 20 years experience, received a dispatch from 911 that a vehicle was stuck on the tracks on Kennard–Osgood Road. Officer Gregory arrived on the scene at approximately 6:13 a.m. and observed a Ms. Donahoe with [Appellant] who was lying on or near the roadway, about fifty (50) feet from the railroad tracks and the car.

Prior to Officer Gregory's arrival, Ms. Donahoe had observed [Appellant's] vehicle stuck on the railroad tracks and stopped to offer assistance. The engine was running and the front wheels of the vehicle were still turning when Ms. Donahoe arrived on the scene. There was no one in the driver's seat, and [Appellant] was sleeping in the back seat. Ms. Donahoe attempted to arouse [Appellant] unsuccessfully, and then called 911 to report the incident.

Ms. Donahoe turned the engine off in [Appellant's] vehicle and put the transmission in park. Shortly thereafter, a passerby arrived and assisted Ms. Donahoe in removing [Appellant] from the vehicle and sat her alongside the roadway. [Appellant] never awoke during this time. Ms. Donahoe remained at the scene until the arrival of Officer Gregory.

Officer Gregory attempted unsuccessfully to wake [Appellant] who was lying on the ground on a chilly morning. Officer Gregory leaned over to detect [Appellant's] pulse and smelled a strong odor of alcoholic beverages, which he believed to be beer, on [Appellant's] breath.

Officer Gregory called for an ambulance and a tow truck. Prior to the arrival of the ambulance, [Appellant] sat up and was escorted back to her vehicle with the assistance of Officer Gregory, who held onto [Appellant's] arm because she was unsteady on her feet. In response to questions from Officer Gregory, [Appellant] indicated that she had been alone and that she had operated the vehicle; but [Appellant] was vague in her response when asked, "What happened?"

[Appellant] was unable to locate her driver's license or registration documents for the vehicle; however Officer Gregory was advised by 911 that [Appellant] was the owner. Officer Gregory observed that [Appellant] was confused and had difficulty answering questions. [Appellant] denied having any injuries and was attended to by ambulance personnel; however [Appellant] refused transport by ambulance to the hospital. At approximately 6:41 a.m., Officer Gregory arrested [Appellant] for DUI, issued her *Miranda* warnings, and then transported [Appellant] to Greenville Hospital for a blood alcohol test. *En route* to the hospital, and after being *Mirandized,* [Appellant] stated that she was the operator of the motor vehicle and admitted consuming Coors Lite.

Upon arrival at the emergency room of the hospital, [Appellant] was read her implied consent warnings from the DL–26 form. [Appellant] refused to submit to a blood alcohol test. Officer Gregory then offered [Appellant] a second opportunity to submit to a blood alcohol test, [ ] which [Appellant] refused a second time.

[Appellant's] vehicle had to be removed from the railroad tracks by a tow truck. One of the tires on the vehicle was a spare "donut." There were indications on the ground in the ballast around the railroad tracks that [Appellant's] vehicle

made attempts to drive off the railroad tracks. The railroad crossing was in disrepair at its intersection with the paved roadway. No field sobriety tests were administered by Officer Gregory, in part out of his concern for [Appellant's] safety, and because [Appellant] was too unsteady at the time. Officer Gregory was unaware how long the vehicle was on the tracks or how long [Appellant] was asleep in the back seat of the vehicle prior to the arrival of Ms. Donahoe.

[Appellant] filed a[n] omnibus motion for pre-trial relief asserting the police lacked probable cause to arrest [Appellant] for DUI and sought suppression of the admission by [Appellant] that she was the operator of a vehicle involved in a single-vehicle accident because [Appellant] was not given *Miranda* warnings prior to being asked at the scene, "What happened?" and whether [Appellant] was the driver. By Order dated December 22, 2005, the Honorable Christopher J. St. John denied [Appellant's] motion. [Appellant] was subsequently convicted of driving under the influence of alcohol, 75 Pa.C.S. § 3802(a)(1), a second offense, an ungraded misdemeanor, not involving a BAC refusal, but involving an accident; and careless driving, 75 Pa.C.S. § 3714(a), a summary offense. [Appellant] was sentenced by Order dated April 5, 2006.

(Trial Court Opinion, dated June 28, 2006, at 2–5). The court sentenced Appellant to incarceration for a period of thirty (30) days, followed by five (5) months' probation. The court directed that "all periods of incarceration shall be served under qualified restrictive intermediate punishment on house arrest with electronic monitoring with drug and alcohol testing monitored by the Mercer County Intermediate Punishment Program (IPP) if [Appellant] qualifies and pays the costs thereof, with release for work, counseling, and medical and dental appointment." (Sentence, filed April 10, 2006, at 2). The court added specific conditions to Appellant's sentence of probation.

■ ¶ 3 Appellant timely filed a notice of appeal on May 3, 2006. By order dated and filed May 30, 2006, the court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b), within five days of the date of the order. Appellant filed her Rule 1925(b) statement on June 7, 2006.[5] On appeal, a three-judge panel of this Court *sua sponte* requested *en banc* review to determine whether this Court's decision in *Commonwealth v. Poncala,* 915 A.2d 97 (Pa.Super.2006), *appeal denied,* —— Pa. ——, 932 A.2d 1287 (2007) precludes imposition of IPP as an alternative sentence for first, second, or third DUI offenses. A majority of the commissioned judges agreed to *en banc* review.

¶ 4 Appellant now raises three issues for our review:

IS THERE PROBABLE CAUSE TO ARREST [APPELLANT] FOR DUI

5. In 2006, Rule 1925(b) gave an appellant fourteen (14) days to file a court-ordered concise statement of matters complained of on appeal. Here, the court ordered Appellant's statement on May 30, 2006, and Appellant filed her statement on June 7, 2006. Therefore, we will not deem her statement untimely or her issues waived. *See Commonwealth v. Gray,* 784 A.2d 137 (Pa.Super.2001) (concluding court order giving appellant only four (4) days to file his Rule 1925(b) statement was manifestly unreasonable, where Rule 1925(b) allowed fourteen (14) days; appellant timely filed and effectively preserved his issues, when he filed his statement within fourteen days of order). Effective July 25, 2007, the Rule 1925(b) now allows an appellant at least twenty-one (21) days "from the date of the order's entry on the docket for the filing and service of the Statement." Pa. R.A.P.1925(b).

WITHOUT A WARRANT WHEN SHE IS FOUND SLEEPING IN THE BACK SEAT OF A DISABLED MOTOR VEHICLE FOR AN UNKNOWN TIME, ALONG RAILROAD TRACKS? WHEN A SUSPECT IS MOVED BY THE POLICE TO ANOTHER LOCATION, AND TOLD TO "SIT TIGHT" AND WAIT FOR AN AMBULANCE, AND POLICE ARE LOOKING THROUGH HER VEHICLE, IS SUCH A SUSPECT IN CUSTODY REQUIRING *MIRANDA* WARNINGS TO BE GIVEN PRIOR TO ELICITATION OF STATEMENTS?

(Appellant's Brief at 6).[6]

MAY THE TRIAL COURT IMPOSE A COUNTY INTERMEDIATE PUNISHMENT SENTENCE OF HOUSE ARREST WITH ELECTRONIC SURVEILLANCE IN *LIEU* OF IMPRISONMENT WHEN THE DUI STATUTE CALLS FOR MANDATORY IMPRISONMENT?

(Appellant's Supplemental Brief at 6).

■ ¶ 5 Initially, we address the issue raised in Appellant's supplemental brief. Appellant argues IPP is an alternative sentence available to eligible offenders convicted of their first, second, or third DUI offense. Appellant asserts this offense was her second DUI offense in ten years and she underwent pre-sentencing drug and alcohol assessment as required by the IPP statute. Appellant concedes the DUI penalties statute specifically requires fixed terms of imprisonment for repeat DUI offenders. Notwithstanding the mandatory DUI penalties, Appellant submits the court retains the discretion to impose IPP in qualified programs for qualified offenders, and the IPP statute does not conflict with the DUI penalties statute.

Appellant concludes her IPP sentence is proper under both statutes, as within the court's discretion. We agree.

■ ¶ 6 This case involves the interplay between the mandatory sentencing provisions of the DUI statute and the discretionary sentencing provisions of the Sentencing Code, which presents "a question of law that compels plenary review to determine whether the court committed an error of law." *Commonwealth v. Anthony B. Williams*, 871 A.2d 254, 262 (Pa.Super.2005). "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *In re Wilson*, 879 A.2d 199, 214 (Pa.Super.2005) (*en banc*).

¶ 7 Section 9721 of the Sentencing Code states:

§ 9721. **Sentencing Generally**

(a) **General Rule.**—In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

(6) County intermediate punishment.

(7) State intermediate punishment.

(a.1) **Exception.**—

(1) **Unless specifically authorized under section 9763 (relating to a sentence of county intermediate punishment) or Chapter 99 (relating to State intermediate punishment), subsection (a) shall not apply where**

---

**6.** Appellant attached her suppression motion to her Rule 1925(b) statement to preserve her issues questioning the legality of the "traffic stop" and the lack of *Miranda* warnings.

a mandatory minimum sentence is otherwise provided by law.

42 Pa.C.S.A. § 9721 (emphasis of exception added). Section 9763 of the Sentencing Code addresses IPP sentencing, in relevant part, as follows:

§ 9763. Sentence of county intermediate punishment

(a) General rule.—In imposing a sentence of county intermediate punishment, the court shall specify at the time of sentencing the length of the term for which the defendant is to be in a county intermediate punishment program established under Chapter 98 (relating to county intermediate punishment) or a combination of county intermediate punishment programs. The term may not exceed the maximum term for which the defendant could be confined and the program to which the defendant is sentenced. The court may order a defendant to serve a portion of the sentence under section 9755 (relating to sentence of partial confinement) or 9756 (relating to sentence of total confinement) and to serve a portion in a county intermediate punishment program or a combination of county intermediate punishment programs.

* * *

(c) Restriction.—

(1) Any person receiving a penalty imposed pursuant to 75 Pa.C.S. § 1543(b) (relating to driving while operating privilege is suspended or revoked), former 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance) or 75 Pa.C.S. § 3804 (relating to penalties) for a first, second or third offense under 75 Pa.C.S. Ch. 38 (relating to driving after imbibing alcohol or utilizing drugs) **may only be sentenced to** county intermediate punishment after undergoing an assessment under 75 Pa.C.S. § 3814 (relating to drug and alcohol assessments).

(2) If the defendant is determined to be in need of drug and alcohol treatment, the defendant may only be sentenced to county intermediate punishment which includes participation in drug and alcohol treatment under 75 Pa.C.S. § 3815(c) (relating to mandatory sentencing). The defendant may only be sentenced to county intermediate punishment in:

(i) a residential inpatient program or a residential rehabilitative center;

(ii) house arrest with electronic surveillance;

(iii) a partial confinement program such as work release, work camp and halfway facility; or

(iv) any combination of the programs set forth in this paragraph.

* * *

42 Pa.C.S.A. § 9763(a), (c)(1)-(2) (emphasis added to text of statute). Section 9804 of the Sentencing Code describes IPP and eligibility in pertinent part as follows:

§ 9804. County intermediate punishment programs

(a) Description.—County intermediate punishment program options shall include the following:

(1) Restrictive intermediate punishments providing for the strict supervision of the offender including programs that:

(i) house the offender full or part time;

(ii) significantly restrict the offender's movement and monitor the offender's compliance with the program; or

(iii) involve a combination of programs that meet the standards set forth under subparagraphs (i) and (ii).

(2) When utilized in combination with restrictive intermediate punishments, restorative sanctions providing for nonconfinement sentencing options that:

(i) Are the least restrictive in terms of the constraint of the offender's liberties.

(ii) Do not involve the housing of the offender, either full or part time.

(iii) Focus on restoring the victim to pre-offense status.

**(b) Eligibility.—**

(1) No person other than the eligible offender shall be sentenced to a county intermediate punishment program.

(2) The Pennsylvania Commission on Sentencing shall employ the term "eligible offender" to further identify offenders who would be appropriate for participation in county intermediate punishment programs. In developing the guidelines, the commission shall give primary consideration to protection of the public safety.

\* \* \*

(4)(i) Any person receiving a penalty imposed pursuant to 75 Pa.C.S. § 1543(b) (relating to driving while operating privilege is suspended or revoked), 3804 **(relating to penalties)** or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock) **shall undergo an assessment** under 75 Pa.C.S. § 3814 (relating to drug and alcohol assessments).

(ii) If the defendant is determined to be in need of drug and alcohol treatment, a sentence to county intermediate punishment shall include participation in drug and alcohol treatment under 75 Pa.C.S. § 3815(c) (relating to mandatory sentencing). The defendant may only be sentenced to county intermediate punishment in:

(A) a residential inpatient program or a residential rehabilitative center;

(B) house arrest with electronic surveillance;

(C) a partial confinement program such as work release, work camp and halfway facility; or

(D) any combination of the programs set forth in this subparagraph.

\* \* \*

**(5) A defendant subject to 75 Pa. C.S.A. § 3804 (relating to penalties) may only be sentenced to county intermediate punishment for a first, second, or third offense.**

42 Pa.C.S.A. § 9804(b)(1)-(2), (4)-(5) (internal emphasis added).

■■■ ¶ 8 Pursuant to the relevant statutes, the court may consider only "eligible offenders" for IPP sentencing. *Commonwealth v. Syno*, 791 A.2d 363, 366 (Pa.Super.2002) (citing 42 Pa.C.S.A. § 9804(b)(1)). "Section 9802 of the Pennsylvania Sentencing Code defines an 'eligible offender' as 'a person convicted of an offense who would otherwise be sentenced to a county correctional facility, **who does not demonstrate a present or past pattern of violent behavior** and who would otherwise be sentenced to partial confinement pursuant to Section 9724 (relating to partial confinement) or total confinement pursuant to Section 9725 (relating to total confinement).'" *Syno supra* (quoting 42

Pa.C.S.A. § 9802) (emphasis added). *See Commonwealth v. Arthur Williams,* 868 A.2d 529 (Pa.Super.2005), *appeal denied,* 586 Pa. 726, 890 A.2d 1059 (2005) (holding IPP "eligible offender" determination tempered by whether offender demonstrates past or present pattern of violent behavior). In adopting IPP as a sentencing alternative, "[t]he Legislature's intent was to give judges another sentencing option which would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/treatment for certain types of non-violent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem while maintaining public safety." *Id.* at 534. Thus, the grant or denial of a defendant's request for IPP is largely within the sound discretion of the trial court. *Syno, supra.*

¶ 9 On the other hand, Section 3804 of the DUI statute provides specific penalties for DUI offenders as follows:

§ 3804. **Penalties.**

**(a) General impairment.**—Except as set forth in subsection (b) or (c), an individual who violates section 3802(a) (relating to driving under influence of alcohol or controlled substance) shall be sentenced as follows:

(1) For a first offense, to:

(i) undergo a mandatory minimum term of six months' probation;

(ii) pay a fine of $300;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 (relating to drug and alcohol assessments) and 3815 (relating to mandatory sentencing).

(2) For a second offense, to:

(i) undergo imprisonment for not less than five days;

(ii) pay a fine of not less than $300 nor more than $2,500;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

(3) For a third or subsequent offense, to:

(i) undergo imprisonment of not less than ten days;

(ii) pay a fine of not less than $500 nor more than $5,000; and

(iii) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

**(b) High rate of blood alcohol; minors; commercial vehicles and school buses and school vehicles; accidents.**—Except as set forth in subsection (c), an individual who violates section 3802(a)(1) where there was an accident resulting in bodily injury, serious bodily injury or death of any person or damage to a vehicle or other property ... **shall** be sentenced as follows:

\* \* \*

(2) For a second offense, to:

(i) undergo imprisonment of not less than 30 days;

(ii) pay a fine of not less than $750 nor more than $5,000;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

*  *  *

**(g) Sentencing Guidelines.**—The sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing do not supersede the mandatory penalties of this section.

75 Pa.C.S.A. § 3804(a), (b), (g) (emphasis added to text of statute). Notwithstanding these mandatory provisions, subsection (5) of Section 9804 allows a defendant subject to Section 3804 penalties to be sentenced to county IPP for a first, second, or third offense. 42 Pa.C.S.A. § 9804(5). The objective of all statutory interpretation and construction is to effectuate the General Assembly's intent. *Arthur Williams, supra* at 534 (quoting *Commonwealth v. Bavusa*, 574 Pa. 620, 633, 832 A.2d 1042, 1049 (2003)).

¶ 10 We are also mindful of this Court's decision in *Poncala, supra*. The facts of that case indicate Poncala took his girlfriend's seven-year old son in her car, without her permission, while Poncala was grossly intoxicated. He drove the vehicle north on South Main Street, crossed into oncoming traffic, struck a utility pole with the rear driver's-side quarter panel, crossed both lanes, and drove the car into the front porch of a residence on South Main Street. At the time of his accident, Poncala was driving without a valid license as his license had been suspended or revoked, related to a previous DUI conviction.

¶ 11 Upon approaching the accident scene, police observed Poncala unconscious, behind the wheel of the vehicle, and reeking of alcohol, while his unbelted front-seat passenger was already standing outside the vehicle. The child had a large laceration across his forehead. Medical personnel arrived on the scene. The child was transported to one medical facility and then life-flighted to Geisinger Hospital for treatment. His injury required over one hundred sutures.

¶ 12 The local fire and rescue team extracted Poncala from the vehicle and transported him by ambulance to CMC Medical Center in Scranton, Pennsylvania, where he was advised of his rights under the implied consent law. Poncala consented to blood alcohol ("BAC") testing. The result was a BAC of 0.236%. Poncala entered an open guilty plea to one count of DUI at 75 Pa.C.S.A. § 3802(a)(1) (general impairment rendering Appellant incapable of safely driving), one count of DUI at 75 Pa.C.S.A. § 3802(c) (driving under the influence at the highest rate of alcohol), and one count of endangering the welfare of minors. His plea agreement was open as to sentencing. The court ordered a full pre-sentence investigation ("PSI") and deferred sentencing.

¶ 13 At sentencing, the Commonwealth again presented Poncala's conviction to the court as his third DUI in ten years. Appellant's counsel argued Appellant was "eligible" for IPP under 42 Pa.C.S.A. § 9804(b)(5) as a third-time offender. The Commonwealth maintained 75 Pa.C.S.A. § 3804(c)(3) compelled that a violation of Section 3802(c), which is also a third or subsequent DUI, mandated a sentence of imprisonment of not less than one year. Upon consideration of the arguments presented, the relevant statutes, and the applicable law, the court denied Poncala's request for IPP and sentenced him to one to two years' incarceration for his current DUI. In the court's Rule 1925(a) opinion, it revealed that Poncala's current offense had really been his fourth and justified the mandatory sentence imposed.

¶ 14 On appeal, we affirmed on another basis, reasoning that the mandatory and specific sentencing provision set forth in 75 Pa.C.S.A. § 3804(c)(3) applied to Poncala's current DUI under 75 Pa.C.S.A. § 3802(c),

and overrode the general and discretionary IPP sentencing provision of 42 Pa. C.S.A. § 9804(b)(5), regardless of whether the DUI at issue was Appellant's third or fourth DUI in ten years. Notably, the record in the case made clear Poncala had undergone drug and alcohol assessment and was not recommended as a Section 9802 "eligible offender." Under the circumstances of his case, Poncala demonstrated the kind of present violent behavior that posed a threat to public safety. *See Arthur Williams, supra; Syno, supra;* 42 Pa.C.S.A. § 9804(b)(2). To the extent *Poncala* stands for a broader proposition, we now limit its holding to instances where the defendant is not an "eligible offender" under the IPP statute and/or the county program does not meet the standards for IPP set forth in 204 Pa.Code § 303.12. *See Arest, supra;* 204 Pa.Code § 303.12.

¶ 15 In the instant case, the trial court convicted Appellant of DUI under 75 Pa. C.S.A. § 3802(a)(1), as a second offense, and as an ungraded misdemeanor not involving a BAC refusal, but involving an accident. The court also convicted Appellant of the summary offense of careless driving under 75 Pa.C.S. § 3714(a). For purposes of the DUI statute, Appellant's penalties fell under Section 3804(b)(2) (accidents involving damage to vehicle). Pursuant to Section 3804(b)(2)(iv), Appellant participated in a drug and alcohol assessment.

¶ 16 At sentencing, the court ordered: "All periods of [Appellant's] incarceration shall be served under **qualified restrictive intermediate punishment** on house arrest with electronic monitoring with drug and alcohol testing monitored by the Mercer County [IPP] **if [Appellant] qualifies** and pays the costs thereof, with release for work, counseling, and medical and dental appointment." (Sentence Order, filed on 4/10/06, at 2) (emphasis added). The

court's sentencing order is consistent with both the IPP statute and the DUI statute. Accordingly, the court acted within its statutory authority and discretion when it imposed IPP for Appellant's second DUI offense, so long as the program is a qualified county IPP program and Appellant is a qualified "eligible offender." *See Syno, supra.*

¶ 17 In her first issue, Appellant asserts the Commonwealth was unable to show Appellant had "actual physical control" of the vehicle. Appellant contends she was asleep in the backseat of her vehicle for an unknown amount of time. Further, Officer Gregory was unable to determine the exact time of the accident. Thus, the Commonwealth failed to show Appellant was the only operator of the vehicle. Appellant also maintains there was no evidence regarding when she became intoxicated or whether she operated the vehicle in such a condition. Further, Appellant claims the dangerous location of the vehicle on the railroad tracks, and the fact that she was asleep in the backseat, equally support the contention that Appellant was more likely a victim than the driver of the vehicle, and someone else might have operated the vehicle. Appellant concludes the police arrested her without probable cause, the court erred in denying her suppression motion, and this Court should reverse and remand the case to the trial court to declare the arrest illegal. We disagree.

¶ 18 "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones,* 874 A.2d 108, 115 (Pa.Super.2005) (quoting *Commonwealth v. LaMonte,* 859 A.2d 495, 499 (Pa.Super.2004)).

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Jones, supra* at 115 (quoting *Commonwealth v. Grundza,* 819 A.2d 66, 67 (Pa.Super.2003), *appeal denied,* 574 Pa. 764, 832 A.2d 435 (2003)).

¶ 19 "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Dommel,* 885 A.2d 998, 1002 (Pa.Super.2005), *appeal denied,* 591 Pa. 722, 920 A.2d 831 (2007) (quoting *In re C.C.J.,* 799 A.2d 116, 121 (Pa.Super.2002)). "Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances.'" *Id.* (quoting *Commonwealth v. Myers,* 728 A.2d 960, 962 (Pa.Super.1999)). Furthermore, "probable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.'" *Id.* (quoting *Commonwealth v. Wright,* 867 A.2d 1265, 1268 (Pa.Super.2005), *appeal denied,* 583 Pa. 695, 879 A.2d 783 (2005), *cert. denied,* 546 U.S. 1104, 126 S.Ct. 1047, 163 L.Ed.2d 879 (2006)).

¶ 20 Pennsylvania's DUI statute provides, in relevant part:

§ 3802. **Driving under influence of alcohol or controlled substance**

(a) **General impairment.—**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1). The term "operate" requires evidence of actual physical control of the vehicle to be determined based upon the totality of the circumstances. *Williams, supra* at 259. "Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle." *Id.* (quoting *Commonwealth v. Woodruff,* 447 Pa.Super. 222, 668 A.2d 1158, 1161 (1995)). The Commonwealth can establish that a defendant had "actual physical control" of a vehicle through wholly circumstantial evidence. *Id. See also Commonwealth v. Johnson,* 833 A.2d 260 (Pa.Super.2003) (collecting cases standing for proposition that Commonwealth may establish by totality of circumstances, defendant was driving, operating or in actual physical control of motor vehicle). Furthermore, "a police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated." *Commonwealth v. Kelley,* 438 Pa.Super. 289, 652 A.2d 378, 382 (1994) (citing *Commonwealth v. Bowser,* 425 Pa.Super. 24, 624 A.2d 125 (1993)).

¶ 21 In *Williams, supra,* at approximately 4:00 a.m., the Edgeworth police department dispatched an officer to investigate a possible DUI at the parking lot of an Eat 'n Park. Upon arrival, the officer observed a vehicle parked diagonally, taking up two handicapped spaces of the lot.

The officer observed Williams in the driver's seat, asleep, with both hands resting on the steering wheel. The engine was running with the headlights and car stereo active. The officer awoke Williams and observed that he had difficulty following instructions and appeared intoxicated. After Williams failed field sobriety tests, the officer transported him to the police station, where a blood alcohol content (BAC) test revealed a reading of 0.138.

¶ 22 At trial, Williams testified that he was not the driver of the vehicle. Rather, Williams maintained he was the passenger and when his friend, who was the driver, went into the Eat 'n Park, Williams moved to the driver's seat and dozed off. The court found Williams' testimony incredible and subsequently convicted him of two counts of DUI. On appeal, Williams challenged the sufficiency of the evidence, arguing, *inter alia*, (1) he was not seen operating or driving the vehicle; and (2) the Commonwealth's witnesses did not establish how long the vehicle had been parked prior to the arrival of the arresting officers.

¶ 23 This Court considered the totality of the circumstances in this matter as follows: (1) Williams was parked outside of an establishment that does not serve alcoholic beverages and there was no evidence Williams consumed alcohol nearby; (2) the car was parked diagonally across two handicapped spaces; (3) Williams was sitting in the driver's seat with his hands on the wheel; (4) the engine of the vehicle was running, the car headlights and stereo were on; (5) the vehicle was registered to Williams' employer and only Williams was authorized to drive it; (6) Williams showed signs of visible intoxication and failed field sobriety tests; and (7) the court found Williams' testimony incredible. This Court agreed with the trial court and held the totality of the circumstances, including

the location and position of the vehicle and the running engine, supported an inference that Appellant had driven his vehicle while intoxicated to the parking lot of the Eat 'n Park, and that Appellant was in actual control of a motor vehicle at the time of his arrest. *Id.* at 260–61.

¶ 24 In the instant case, Officer Gregory responded to a 911 dispatch at 6:13 a.m. He observed Appellant's vehicle wedged on the railroad tracks and Appellant lying on the nearby roadway. Ms. Donahoe, a passerby, informed Officer Gregory she had observed Appellant's vehicle stuck on the railroad tracks with the front wheels turning and the engine running, and went to offer help. Appellant was unconscious in the backseat and Ms. Donahoe could not awaken her. Ms. Donahoe put the transmission of Appellant's vehicle in park and, along with another passerby, removed Appellant from the vehicle to the side of the roadway.

¶ 25 Officer Gregory was also unable to awaken Appellant and detected a strong odor of alcohol on her breath. Prior to the arrival of the ambulance, Appellant sat up and required further assistance from Officer Gregory to walk to her vehicle, because she was unsteady on her feet. Officer Gregory observed that Appellant was unable to talk in complete sentences, seemed confused, and was vague in her responses to his questions. Appellant was also unable to locate her driver's license or registration documents. Officer Gregory concluded Appellant exhibited signs of disorientation associated with alcohol consumption. Officer Gregory did not administer any field sobriety tests, in part out of concern for Appellant's safety, and in part because she was too unsteady on her feet. On two occasions, Appellant refused a BAC test.

¶ 26 The trial court addressed Appellant's issue as follows:

[Appellant] here was not legally parked and, upon discovery by a passerby, the engine was running, the car was in gear and the wheels were spinning while [Appellant] was apparently passed out in the backseat. Furthermore, the car was straddling a set of railroad tracks, perpendicular to and completely off a nearby blacktop road, and it appeared as though it was driven down the railroad tracks a short distance. In addition, [Appellant] had a strong odor of alcohol on her breath and could not be aroused by two innocent bystanders when they carried her 50 feet away from the car to remove her from harm's way on the railroad tracks. The police officer upon his arrival at the scene also had a difficult time awakening [Appellant], which in conjunction with the strong odor of alcohol on her breath, leads to the reasonable inference that she was extremely impaired by alcohol. Furthermore, the positioning of the vehicle with the engine running and still in gear also leads to the inference of driving under the influence of alcohol to the degree that she was not able to safely operate her vehicle as well as the inference that it had been driven onto the railroad tracks in an area where there were no commercial establishments and very few residences. It also appeared to Officer Gregory that the driver mistook the railroad tracks for a nearby intersecting road.

The only other critical fact left to be determined by Officer Gregory at the scene was who operated this motor vehicle or was in actual physical control of its movements. Officer Gregory after arousing [Appellant] at the scene walked her back to her car because it was cold outside and she needed [to be] removed from the roadway. So he walked her back to her car and she had difficulty walking without his assistance. She was also unable to find either her driver's license or registration information once in her car, but Officer Gregory was informed by 911 that she was the registered owner of this vehicle. Furthermore, when asked by Officer Gregory, [Appellant] advised that she was alone in the vehicle and that no one else had been with her.[2] In addition, this experienced police officer observed that [Appellant] was confused, disoriented and had difficulty answering some of his questions. In short, all of the above facts support a reasonable inference that [Appellant] had operated and/or was in actual physical control of the movement of her vehicle while she was under the influence of alcohol to the degree that it rendered her incapable of safe driving in support of probable cause to arrest her for DUI. Hence, the arrest of [Appellant] was supported by probable cause, whether or not [Appellant's] pre-*Miranda* admission that she was the operator is considered in the probable cause equation.

---

2. Officer Gregory could not recall at the suppression hearing whether he asked [Appellant] at the scene if she was the driver and his police report was silent on that point. Officer Gregory was given an opportunity to refresh his recollection on the witness stand with his preliminary hearing testimony when he testified to her admission. The transcript, however, did not refresh his memory and the Commonwealth sought to introduce his preliminary hearing testimony on this point over the objection of the defense. A ruling on the admissibility of a portion of the transcript was reserved pending receipt of memoranda of law from the parties. [Appellant's] objection is overruled after review of [her] attorney's memorandum and Pa.R.E. 804(b)(1) and 804(a)(3).

(Conclusions of Law and Order, filed June 28, 2006, at 5). We accept the trial court's analysis. *See Johnson, supra; Williams, supra.* The record supports the court's factual findings with regard to "actual

physical control" of the vehicle, and the legal conclusions the court drew from those facts are correct. *See Jones, supra.* Thus, we will not disturb the court's decision. Accordingly, this issue merits no relief.[7]

¶ 27 In her next issue, Appellant argues she was "in custody" at the accident scene before Officer Gregory informed her of her *Miranda* rights. Appellant concedes Officer Gregory's role at the accident scene was primarily to render aid; however, Appellant maintains Officer Gregory detained her at this time as well. Appellant asserts Officer Gregory initiated the following actions before advising Appellant of the *Miranda* warnings: (1) moved Appellant from the side of the road to her vehicle; (2) called a tow truck for the vehicle; (3) called an ambulance; (4) told Appellant to "sit tight and just wait;" and (4) looked through her car. (Appellant's Brief at 15). Appellant claims these actions restricted her freedom so that she did not reasonably believe she was free to leave the accident scene. As such, Appellant insists she was under custodial detention and, therefore, Officer Gregory should have given Appellant her *Miranda* warnings. Appellant concludes she admitted she was the operator of the vehicle before Officer Gregory had issued proper *Miranda* warnings. Therefore, her admission should have been suppressed. We disagree.

¶ 28 Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of her *Miranda* rights. *Commonwealth v. DiStefano,* 782 A.2d 574, 579 (Pa.Super.2001), *appeal denied,* 569 Pa. 716, 806 A.2d 858 (2002). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [her] freedom of action in any significant way." *Miranda, supra* at 444, 86 S.Ct at 1612, 16 L.Ed.2d at 706. "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Commonwealth v. Gaul,* 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), *cert. denied,* — U.S. —, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007). Thus, "Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect." *Commonwealth v. Ingram,* 814 A.2d 264, 271 (Pa.Super.2002), *appeal denied,* 573 Pa. 671, 821 A.2d 586 (2003). "[I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. In conducting the inquiry, we must also keep in mind that not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances by an individual are admissible even without *Miranda* warnings." *Gaul, supra.*

Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of [her] free-

---

7. We acknowledge Appellant's argument that the Commonwealth could not determine the time of the accident, and therefore, could not prove Appellant was intoxicated at the time she operated the vehicle. *See Kelley, supra* (holding trial court erred in convicting defendant of DUI, where Commonwealth could not establish defendant's BAC reading of 0.18% was within two hours of defendant's operation of vehicle). Although the time between a defendant's BAC test and the time of driving is relevant to charges involving BAC levels, it is not necessarily dispositive of charges under Section 3802(a)(1). Here, Appellant refused a BAC test. Because the Commonwealth was not concerned with proving Appellant's BAC level at the time of the accident, the exact time of the accident would not end the inquiry.

dom of action in any significant way or is placed in a situation in which [she] reasonably believes that [her] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [her] freedom of action is being restricted.

*Commonwealth v. Clayton Williams,* 539 Pa. 61, 74, 650 A.2d 420, 427 (1994) (internal citations omitted). *See also Commonwealth v. Mannion,* 725 A.2d 196, 202 (Pa.Super.1999) (en banc) (stating whether person is in custody for *Miranda* purposes must be evaluated on case-by-case basis with due regard for facts involved); *Commonwealth v. Peters,* 434 Pa.Super. 268, 642 A.2d 1126, 1130 (1994) *(en banc),* appeal denied, 538 Pa. 668, 649 A.2d 670 (1994) (stating: "Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against [her] will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions"; fact that defendant was focus of investigation is relevant for determination of whether defendant was in "custody" but does not require *per se Miranda* warnings).

Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

*Mannion, supra* at 200. Thus, the ultimate inquiry for determining whether an individual is in custody for *Miranda* purposes is "whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Commonwealth v. Pakacki,* 587 Pa. 511, 519, 901 A.2d 983, 988 (2006) (quoting *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: "the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions." *Commonwealth v. Levanduski,* 907 A.2d 3, 24 (Pa.Super.2006) *(en banc),* appeal denied, 591 Pa. 711, 919 A.2d 955 (2007).

¶ 29 Additionally, motorists have certain statutory obligations to provide officers with information at an accident scene. 75 Pa.C.S.A. §§ 3743 (relating to accidents involving damage to attended vehicle) and 3744 (referring to duty to give information and render aid). Thus, a motorist is not in custody for *Miranda* purposes when her freedom is restricted to the extent of her statutory obligation to remain at the scene and provide required information. *Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26 (1988).

¶ 30 In *Gonzalez,* police officers responded to the sound of a nearby accident. Upon arrival, the officers observed two heavily damaged vehicles. Due to the nature of the accident, the officers radioed for rescue personnel. While the rescue personnel attended to the more heavily

damaged vehicle, the officers approached Gonzalez's vehicle, which appeared to have minimal damage only to its front end. Initially, the officers asked Gonzalez if he were hurt. Gonzalez responded that he was not injured. Then, the officers requested Gonzalez to step out of the vehicle. Gonzalez complied with the officers' request. The officers next asked Gonzalez, "what happened?" As Gonzalez relayed the information concerning the accident to the officers, they observed a strong odor of alcohol on his breath. "The officers noticed that [Gonzalez's] eyes were watery and blood shot; that his conduct was stuporous and sleepy; and, he was unsteady and swaying." *Id.* at 120, 546 A.2d at 28. The officers also asked Gonzalez to provide them with his driver's license and registration; however, Gonzalez failed to produce either item.

¶ 31 The officers placed Gonzalez under arrest and transported him to the police station and then eventually to the Police Administration Building. At the Police Administration Building, the officers administered Gonzalez two breathalyzer tests, registering a reading of .082% and .087%, respectively. The officers then transported Gonzalez to the hospital, where he consented to a blood test. Tests on the blood sample revealed a .09% BAC.

¶ 32 The Commonwealth charged and tried Gonzalez for, *inter alia,* driving under the influence of alcohol or a controlled substance. The trial court found Gonzalez guilty of DUI, and he appealed. This Court affirmed the DUI conviction. Gonzalez petitioned the Pennsylvania Supreme Court for allowance of appeal, which the Supreme Court granted.

¶ 33 The Supreme Court considered Gonzalez's argument concerning admission of his statements made at the accident scene prior to *Miranda* warnings. The

Court analyzed the totality of the circumstances in the *Gonzalez* case as follows:

> Although [Gonzalez] had a duty under the Motor Vehicle Code to stay at the scene of the accident and identify himself and his vehicle, and exhibit his operator's license and proof of insurance, he was not under arrest, nor was he in custody. His freedom was only restricted to the extent of his statutory obligation to stay and provide the required information. When the police officers approached [Gonzalez] at the accident scene and asked him if he was hurt and what had happened, [Gonzalez] was not in custody, nor could he have reasonably believed he was in custody for purposes of *Miranda.*
>
> At that time, [Gonzalez] was not under arrest and he has not shown that he was subjected to restrains comparable to those associated with an arrest. [Gonzalez] was asked a minimal number of questions at the scene of an accident on a public street. Those questions cannot be characterized as custodial interrogation. It follows that the statement made by [Gonzalez] in response to the police questioning was admissible in evidence, and the trial court did not err in receiving it.

*Id.* at 124, 546 A.2d at 29–30.

¶ 34 Instantly, Officer Gregory responded to a 911 radio dispatch indicating an accident. When Officer Gregory tried to awaken Appellant and remove her from the ground, he detected a strong odor of alcohol on her breath. Officer Gregory then called for an ambulance and a tow truck. Officer Gregory assisted Appellant to her vehicle and asked her to produce her driver's license and registration. When Appellant was unable to locate the requested documents, Officer Gregory told her it was unimportant at the moment, and to "sit tight" until the ambulance arrived.

Officer Gregory asked Appellant what had happened and if she was the only person involved in the accident. Appellant indicated she was the only person involved with the accident, but was vague on her response to the question of "what happened?" At that point, Officer Gregory arrested Appellant, gave her *Miranda* warnings, and asked her to wait in the vehicle until the ambulance arrived. When the ambulance came onto the scene, ambulance personnel attended to Appellant, but she denied having any injuries. Officer Gregory placed Appellant in his patrol cruiser and took her to the hospital. On the way to the hospital, Appellant indicated to Officer Gregory that she had consumed beer.

¶ 35 Considering the totality of the circumstances, Officer Gregory's basis for temporarily detaining Appellant prior to issuing *Miranda* warnings was to obtain general information concerning the accident. Additionally, the time between Officer Gregory's arrival on the scene and the *Miranda* warnings was less than thirty minutes. The questioning also took place in public view at the accident scene. *See Commonwealth v. Leib,* 403 Pa.Super. 223, 588 A.2d 922 (1991), *appeal denied,* 528 Pa. 642, 600 A.2d 194 (1991) (explaining temporary detention aspects of traffic stops generally do not constitute custody for *Miranda* purposes because they are typically brief and commonly occur in public, which is less police dominated atmosphere than at police station, and generally do not curtail motorist's freedom to degree associated with arrest).

¶ 36 Officer Gregory used no restraints on Appellant prior to issuing her *Miranda* warnings. In addition, Officer Gregory did not threaten or draw his weapon at any time. Finally, Officer Gregory did not even subject Appellant to a field sobriety test out of concern for her safety; rather, he observed other *indicia* of intoxication which he recognized from his experience as a law enforcement officer. Under these circumstances, we hold Appellant's initial detention was not so coercive or her freedom so curtailed as to constitute a formal arrest. *See Pakacki, supra; Gonzalez, supra; Levanduski, supra.* Thus, Appellant was not in custody for purposes of *Miranda* when she first admitted she had been the operator of the vehicle. Further, Appellant again admitted she was the operator of the vehicle after Officer Gregory had arrested her and issued proper *Miranda* warnings. *See Levanduski, supra* (explaining potential *Miranda* violation was overcome by admissions made after receiving proper *Miranda* warnings). Thus, Appellant's second claim merits no relief.

¶ 37 Based upon the foregoing, we hold there was probable cause to arrest Appellant for DUI under the totality of the circumstances; Appellant was not "in custody" for purposes of *Miranda* when she first made incriminating statements to Officer Gregory; and the court had the statutory authority and discretion to sentence Appellant to IPP, if both Appellant and the program qualified. Accordingly, we affirm.

¶ 38 Judgment of sentence affirmed.

¶ 39 *Judge ORIE MELVIN, CONCURS IN THE RESULT.