J-S54010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TRACY A. JORDAN, | |
| Appellant | No. 2308 EDA 2014 |

Appeal from the PCRA Order July 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0305001-2005

BEFORE:  BOWES, PANELLA, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 14, 2015**

Tracy A. Jordan appeals *pro se* from the order entered on July 1, 2014, wherein the trial court denied post-conviction relief.  We affirm.

On November 8, 2006, a jury convicted Appellant of second degree murder, robbery, and possessing an instrument of crime ("PIC").  The convictions stem from the 2004 robbery and murder of the owner of Cash Plus Check Cashing Agency in Philadelphia, Pennsylvania.  The trial court imposed life imprisonment for the murder conviction and a concurrent term of two and one-half to five years for PIC.  The robbery merged with second-degree murder for the purpose of sentencing.  We affirmed the judgment of sentence.  ***Commonwealth v. Jordan***, 961 A.2d 1277 (Pa.Super. 2008) (unpublished memorandum).

---

* Former Justice specially assigned to the Superior Court.

On December 8, 2008, Appellant filed a timely PCRA petition. Counsel was appointed, and he filed an amended PCRA petition leveling a litany of ineffective assistance of counsel claims, including *inter alia*, that trial counsel should have filed a motion to suppress the verbatim written statement that Appellant provided to the police on November 18, 2004, and the evidence that flowed from Appellant's consent to search his residence. The petition was dismissed without a hearing.[1] This Court affirmed, in part, and remanded for the trial court to conduct "a hearing limited to [Appellant's] claim of ineffective assistance of counsel regarding trial counsel's failure to file a suppression motion." **See Commonwealth v. Jordan**, 82 A.3d 1063 (Pa.Super. 2013) (unpublished memorandum at 14.)

On December 13, 2013, the PCRA court conducted an evidentiary hearing consistent with our directive. Trial counsel, Gregory Pagano, Esquire, was the only witness presented during the hearing. He testified that Appellant's November 18, 2004 statement to police was not only voluntary and consensual, but also exculpatory and consistent with the agreed-upon defense strategy of highlighting Appellant's cooperation with the police throughout the investigation as militating in favor of finding that

---

[1] After the filing of the notice of appeal, Appellant filed a motion to proceed *pro se*. The trial court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988), and permitted Appellant to represent himself. He continues *pro se* representation in this appeal.

he was innocent and wrongly accused. N.T., 12/19/13, at 10, 11-12, 17, 31, 33-34). Following the hearing and the submission of post-hearing briefs, the PCRA court entered the above-referenced order denying relief. This timely appeal followed.

Appellant presents the following questions for our review:

I. Under what federal or state legal authority [did] the police [have] to hold Appellant at their headquarters while his home was being searched?

II. Under the federal and state categories of interaction between citizens and police, where does the encounter with Appellant fall?

III. Can trial counsel be considered competent when he exhibits an extreme lack of legal knowledge or legal precedent?

IV. Can trial counsel[']s strategy be considered reasonable under prevailing professional norms?

Appellant's brief at 3.

We have previously held that:

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Halley*, 870 A.2d 795, 799 n.2 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super. 2001).

*Commonwealth v. Turetsky*, 925 A.2d 876, 879 (Pa.Super. 2007).

As it relates specifically to Appellant's challenge to trial counsel's stewardship in this case, in order to prevail on a PCRA claim for ineffective

assistance of counsel, Appellant must establish by a preponderance of the evidence: (1) that the underlying claim has merit; (2) that there was no reasonable basis for counsel's conduct or lack thereof; and (3) that Appellant suffered prejudice as a result of counsel's conduct or lack thereof. ***Commonwealth v. Laird***, __ A.3d__, 2015 WL 4401561 at *3 (Pa. 2015). Counsel is presumed effective, and the burden of establishing counsel's ineffectiveness always lies with Appellant. ***Commonwealth v. Balodis***, 747 A.2d 341, 334 (Pa. 2000). As our Supreme Court observed in ***Commonwealth v. Walker***, 36 A.3d 1, 7 (Pa. 2011), "Failure to establish any prong of the test will defeat an ineffectiveness claim."

Notwithstanding the four articulated issues listed in Appellant's brief, the crux of his argument is that trial counsel provided ineffective assistance in failing to file an omnibus pretrial motion seeking to invalidate his consent to search his home and suppress the evidence derived from his November 18, 2004 police interview after they failed to advise him of his rights under ***Miranda v. Arizona***, 384 U.S. 436 (1966). The following legal principles guide our review. Generally, "[s]tatements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of her ***Miranda*** rights." ***Commonwealth v. Williams***, 941 A.2d 14, 30 (Pa.Super. 2008) (*en banc*) (citations omitted). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of her

freedom of action in any significant way." *Id*. (citations and internal quotations omitted).

In **Williams**, we continued, "In evaluating whether **Miranda** warnings were necessary, a court must consider the totality of the circumstances. In conducting the inquiry, we must also keep in mind that not every statement made by an individual during a police encounter amounts to an interrogation." *Id*. Conversely, however, "volunteered or spontaneous utterances by an individual are admissible even without **Miranda** warnings." *Id*.

We summarize Appellant's factual basis for his ineffectiveness claim as follows. **See** Appellant's brief at 4-5. On November 18, 2004, Philadelphia Homicide Detective James Griffin and his partner Detective Cruz[2] interacted with Appellant at his home. Detective Cruz went to the rear of the residence to guard the back door while Detective Griffin advanced toward the front door with his firearm drawn. Detective Griffin did not holster his weapon until Appellant admitted both detectives into the home. After questioning Appellant briefly and advising him that his fingerprints had been discovered at the murder scene, the detectives requested that Appellant accompany them to the police station for additional questioning.

---

[2] The certified record does not reveal Detective Cruz's Christian name.

Appellant continues that the detectives refused his request to drive his own vehicle to the police interview, and, when he arrived at the police station, the police removed his cell phone, wallet, and keys. He asserts that police questioned him without providing a *Miranda* warning.[3] He also contends that, prior to providing written consent for the police to search his home for a computer that was stolen from the decedent during the homicide, they rejected his request to be present during the search and rebuffed his attempt to contact his wife so that she would not be alarmed when the police arrived at their home. Thereafter, the police locked Appellant in the interrogation room for two hours while they executed the search. The search was not fruitful, and the police released Appellant from custody. Two days later, the police obtained a warrant to seize the service weapon registered to Appellant's wife, a police officer with the Philadelphia

_____

[3] In pertinent part, Appellant's statement indicated that he was at the check cashing agency two days prior to the murder, he owns a .22 caliber pistol, and that his wife uses a .40 caliber Smith and Wesson service weapon as a police officer for the Philadelphia Housing Authority. Appellant also noted that while no one in the household had recently acquired a laptop computer or carrying case, his son owns a Dell brand laptop. Appellant consented to the search of his residence for the computer that was stolen from the victim during the robbery. Significantly, in contrast to the assertions in Appellant's brief, there was nothing in the verified statement regarding cellular telephone records, subpoenas or warrants relating to those records, or a witness identified as Julius Peurifor. *See* Commonwealth Exhibit 1, Investigation Interview Record, 11/18/04, at 1-5.

Housing Authority.[4] Four days after the gun was seized pursuant to the warrant, Appellant was arrested and charged with the robbery and homicide. He believes that the foregoing factual scenario necessitated that Attorney Pagano file a pretrial suppression motion to prevent the admission of evidence flowing from the police interview and the search of his residence.

In rejecting Appellant's claim, the trial court determined that Appellant failed to establish the second and third prong of the test to determine ineffective assistance of counsel, *i.e.*, whether a reasonable basis existed for counsel's conduct and whether Appellant suffered prejudice. Specifically, the trial court concluded that Attorney Pagano credibly testified that Appellant's statement was voluntary, exculpatory, and consistent with the information that Appellant had provided to him. He also believed that the statement supported the agreed-upon defense strategy of highlighting Appellant's cooperation with the homicide investigation and consenting to the search of his home as evidence of him being wrongfully accused. Moreover, Attorney Pagano testified that Appellant did not inform him that, during the initial exchange at Appellant's home, Detective Cruz had been posted at his rear door while Detective Griffin approached the front of the residence with his gun drawn.

_____

[4] Police interviewed Appellant's wife separately, and she surrendered her duty weapon to detectives at the police station pursuant to the warrant dated November 20, 2004.

The trial court observed that Attorney Pagano's recollection was consistent with Appellant's prior testimony during the jury trial. Specifically, Appellant had testified that the statement was voluntary. He also neglected to mention the detectives' respective behaviors in staking out the rear of the residence and brandishing a sidearm while approaching the home. Based upon these facts, the trial court found that Appellant failed to demonstrate by a preponderance of the evidence that Attorney Pagano lacked a reasonable basis to forego challenging the interview in an omnibus suppression motion.

As it relates to the prejudice prong, the trial court further stressed that Appellant failed to establish prejudice. The court observed that Appellant's claim is based upon general challenges to counsel's stewardship in failing "to subject the prosecution's case to any meaningful adversarial testing" and to protect his basic federal and state constitutional rights. Trial Court Opinion, 10/3/14, at 4. We agree with the trial court's assessment on both accounts.

The certified record sustains the trial court's findings and determinations of credibility relating to Attorney Pagano's reasonable trial strategy. During the evidentiary hearing, Attorney Pagano testified that he has handled several thousand cases, including forty homicide jury cases, in his twenty years of practice. N.T., 12/16/13, at 8. He explained that after reading Appellant's verbatim statement and discussing the situation and trial strategy with Appellant, he declined to file a motion to suppress the

statement. *Id*. at 9-12, 33-34.  Specifically, he doubted that the lack of a *Miranda* warning in this case violated Appellant's 5th Amendment rights because the statement and concomitant consent to search his home were given voluntarily.  *Id*. at 11, 23, 34.  More important to our review, Attorney Pagano believed that the statement was exculpatory, consistent with Appellant's defense, and unlikely to be used by the Commonwealth as evidence.  *Id*. at 10-11.  Further, noting that Appellant testified during trial that he provided the statement to police voluntarily, Attorney Pagano stressed that Appellant's cooperation with the investigation, voluntary statement, and consent to the search all bolstered his assertion that he was innocent and had been wrongfully accused.  *Id*. at 11-12.

During cross-examination, Attorney Pagano further explained that he was in possession of Appellant's verbatim statement since the outset of this case and immediately knew that the police had obtained the statement without a *Miranda* warning.  He investigated the circumstances surrounding the interview and discussed all aspects of the statement with Appellant and his family.  *Id*. at 18-19, 29-30.  Indeed, Attorney Pagano testified that he "investigated everything that [Appellant] asked [and] put a tremendous amount of time and effort into this case[.]"  *Id*. at 30.  However, he denied that Appellant had informed him that Detective Griffin approached the home with a drawn weapon or that Detective Cruz covered the rear of the residence to prevent his flight.  *Id*. at 19.  Attorney Pagano also did not

recall the particulars concerning when the police removed Appellant's wallet, keys, and telephone, but he added that the information that was adduced in the verbatim statement was consistent with what Appellant had told the detectives during the prior voluntary exchange at his residence. *Id*. at 21. Similarly, Attorney Pagano testified that while he did not remember whether Appellant had indicated to him that the police locked Appellant in the interrogation room or rebuffed his request to be present during the search of his residence, Attorney Pagano's "recollection was that [Appellant's] wife . . . also cooperated with police and . . . allowed them to search the home." *Id*. at 23-24, 26.

As the foregoing testimony supports the PCRA court's findings of fact and credibility determination in favor of Attorney Pagano and against Appellant, we will not disturb it. For this reason, we find that the certified record sustains the trial court's determination that Attorney Pagano's stated strategy to use the verified statement and Appellant's cooperation in the investigation to bolster the agreed-upon defense strategy was not so unreasonable that no competent attorney would have chosen it.

Appellant misapprehends the significance that Attorney Pagano ascribed to the fact that the verified statement was exculpatory. Appellant accurately states that for the purposes of determining whether a *Miranda* warning is warranted, it makes no difference whether the challenged statement is inculpatory or exculpatory. Hence, he intimates that Attorney

Pagano provided ineffective assistance in finding that the exculpatory nature of the verified statement would have foreclosed suppression under 5th Amendment jurisprudence. Unfortunately for Appellant, this argument mischaracterizes Attorney Pagano's reasoning. Rather than concluding that an exculpatory statement could not be subject to suppression, Attorney Pagano referred to the statement's exculpatory nature, as well as its consistency with the defense strategy, and the unlikelihood that the Commonwealth would invoke the statement against Appellant, as grounds to decline to suppress it. That is, the references to the statement being exculpatory related to the reasonableness of Attorney Pagano's decision to forego suppression and not the validity of the custodial statement proffered without a ***Miranda*** warning. Stated another way, even to the extent that the statement could be considered constitutionally infirm, its admissibility inured to Appellant's benefit.

Additionally, the record confirms the trial court's determination that Appellant failed to satisfy the prejudice prong of the test for ineffectiveness. Stated plainly, Appellant neglected to explain how the Commonwealth used the verified statement against him. In fact, to the extent that Appellant references statements that the Commonwealth allegedly introduced at trial, that information did not flow from the verified statement that formed the basis of his ineffective assistance of counsel claim. Likewise, as it relates to the allegedly infirm consent that he provided to police to search his home,

Appellant does not identify what evidence was obtained during the search that lead to his conviction. Indeed, Appellant concedes that the search that was based upon his consent was not fruitful and that the police only seized the purported murder weapon **after** interviewing his wife, who previously consented to the search of the residence, and obtaining a warrant to seize it from her. Appellant fails to assert how the lack of a ***Miranda*** warning on November 18, 2004, tainted the seizure of evidence from his wife's person pursuant to a warrant issued two days later. Thus, Appellant's attempt to assail Attorney Pagano's stewardship for failing to suppress the statements is ineffectual.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/14/2015</u>