J-S32008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONNIE BRADLEY | : | |
| | : | |
| Appellant | : | No. 2219 EDA 2016 |

Appeal from the Judgment of Sentence April 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006748-2010

BEFORE: GANTMAN, P.J., STABILE, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED JULY 17, 2017**

Appellant, Ronnie Bradley, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for first-degree murder, conspiracy, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possessing instruments of crime.[1] We affirm.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises two issues for our review:

_____

[1] 18 Pa.C.S.A. §§ 2502(a); 903; 6106; 6108; 907, respectively.

_____

*Former Justice specially assigned to the Superior Court.

SHOULD APPELLANT'S CONFESSION TO POLICE HAVE BEEN SUPPRESSED BECAUSE APPELLANT SUFFERED FROM LIFELONG INTELLECTUAL DEFICITS?

WAS APPELLANT'S CHARACTER FOR BEING PEACEFUL AND NONVIOLENT IMPROPERLY IMPEACHED BY THE FACTS OF THE CRIMES AT ISSUE?

(Appellant's Brief at 4).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Williams**, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 115 (Pa.Super. 2005)).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Williams, supra** at 27 (quoting **Jones, supra**).

> In determining whether a defendant's waiver of his **Miranda**[2] rights is valid, a trial court must consider: (1) whether the waiver was voluntary, in the sense that the waiver was not the result of governmental pressure; and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice. The Commonwealth bears the burden of

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

establishing that a defendant knowingly and voluntarily waived his *Miranda* rights. Factors to be considered in determining whether a waiver is valid and a confession is voluntary include: the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any other facts which may serve to drain one's powers of resistance to suggestion and coercion.

*Commonwealth v. Patterson*, 625 Pa. 104, 139, 91 A.3d 55, 76 (2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 1400, 191 L.Ed.2d 373 (2015) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Lillian Harris Ransom, we conclude Appellant's first issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of that issue. (*See* Trial Court Opinion, filed August 3, 2016, at 8-10) (finding: testimony/evidence at suppression hearing showed police issued Appellant verbal *Miranda* warnings followed by seven questions to confirm his understanding of warnings; Appellant signed *Miranda* waiver in nine places and initialed document seven times; in addition to coherently responding to detective's questions, Appellant identified photograph of his cohort, whom Appellant had named in his statement to police; when asked to review his statement before attesting to veracity of its contents, police asked Appellant to read several sentences from statement out loud so police officers knew Appellant could read; Appellant's mother testified that Appellant received

mental health services from ten separate institutions, prior to date he gave statement to police, and was enrolled in special education classes from sixth grade until he stopped going to school in ninth grade; Appellant testified he was able to read and write at only fourth grade level at time he gave statement to police;[3] Appellant introduced no other testimony/evidence to verify his reading level, intelligence, or mental health at time he gave statement to police; detective who took Appellant's statement saw no signs of Appellant's alleged diminished mental health/intellectual deficits at time of statement; Appellant might have some issues which led him to seek treatment in different mental health facilities, but his answers to questions posed by police were responsive, and his signatures throughout four-page statement established that Appellant's ***Miranda***-waiver and statement to police were knowing, intelligent, and voluntary). Therefore, with respect to Appellant's first issue, we affirm on the basis of the trial court's opinion.

In his second issue, Appellant argues the Commonwealth asked two of Appellant's character witnesses inappropriate questions. Specifically, Appellant asserts the Commonwealth sought to impeach two of his character witnesses' testimony by asking them if they would be surprised that police located a gun under Appellant's bed in connection with the crimes charged,

_____

[3] In its findings of fact and conclusions of law issued at the conclusion of the suppression hearing, the court expressly stated it found Appellant's testimony incredible. (***See*** N.T. Suppression Hearing, 4/8/14, at 34-35.)

that Appellant admitted ownership of the gun to police, and that police arrested Appellant for murder. Appellant claims these questions were improper because the Commonwealth can impeach a defense character witness' testimony only with the witness' knowledge of acts Appellant committed prior to commission of the offenses at issue. Appellant maintains defense counsel objected to the prosecutor's questions but the court overruled the objections. Appellant insists the court's rulings do not constitute harmless error because evidence of good character alone is enough to warrant a verdict of not guilty, particularly where Appellant argued that his cohort was responsible for Victim's murder. Appellant concludes the court admitted improper impeachment testimony, and this Court must reverse and remand for a new trial. We disagree.

The standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

**Commonwealth v. Hyland**, 875 A.2d 1175, 1185-86 (Pa.Super. 2005), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005) (internal citations and quotation marks omitted). Further, "[t]o constitute reversible error, an

evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Robertson***, 874 A.2d 1200, 1209 (Pa.Super. 2005) (internal citation omitted).

> The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. However:
>
>> It is well established that an error is harmless only if we are convinced beyond a reasonable doubt that there is no reasonable possibility that the error could have contributed to the verdict. The Commonwealth bears the burden of establishing the harmlessness of the error. This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Passmore***, 857 A.2d 697, 711 (Pa.Super. 2004), *appeal denied*, 582 Pa. 673, 868 A.2d 1199 (2005) (internal citations and quotation marks omitted).

To preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate state of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal. ***Commonwealth v. Shamsud-Din***, 995 A.2d 1224 (Pa.Super. 2010). A party must state specific grounds for his objection, unless it is apparent from

the context. Pa.R.E. 103(a)(1)(B). ***See also Commonwealth v. Duffy***, 832 A.2d 1132 (Pa.Super. 2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004) (explaining failure to state specific basis for objection results in waiver of challenge on appeal to admission of evidence).

Instantly, Appellant presented four character witnesses at trial: Appellant's mother, Appellant's brother, Appellant's sister, and Appellant's aunt. During cross-examination of Appellant's brother, defense counsel objected to the following questions posed by the prosecutor:

> [THE COMMONWEALTH]: Would it surprise you to learn that police officers found a loaded .45 caliber handgun under your brother's bed?
>
> [DEFENSE COUNSEL]: Objection, your Honor.
>
> [THE COURT]: Overruled.
>
> [THE WITNESS]: I'd be very surprised.
>
> [THE COMMONWEALTH]: Would it surprise you that your brother admitted to police that that was his gun?
>
> [DEFENSE COUNSEL]: Objection, again.
>
> [THE COURT]: Overruled.
>
> [THE WITNESS]: Surprised.
>
> [THE COMMONWEALTH]: No further questions.

(N.T. Trial, 4/9/14, at 189). During cross-examination of Appellant's sister, defense counsel objected to the following question posed by the prosecutor:

> [THE COMMONWEALTH]: Do you know your brother got arrested for murder; right?

[DEFENSE COUNSEL]:    Yes.

[THE COMMONWEALTH]:  Were you surprised by that?

[THE WITNESS]:    Yes.

[DEFENSE COUNSEL]:    Objection.

[THE COURT]:    Overruled.

[THE COMMONWEALTH]:  Did you know that police found a .45-caliber handgun under his bed?

[THE WITNESS]:    No.

[THE COMMONWEALTH]:  Does it surprise you to learn that police did find a .45-caliber handgun under your brother's bed?

[THE WITNESS]:    Yes.

[THE COMMONWEALTH]:  Would it surprise you to learn that your brother admitted to having a .45 caliber handgun underneath his bed?

[THE WITNESS]:    Yes.

[THE COMMONWEALTH]:  No further questions, your Honor.

(N.T. Trial, 4/10/14, at 21-22).

The record makes clear defense counsel did not lodge specific objections to the questions posed during the prosecutor's cross-examination of Appellant's brother or Appellant's sister. The context of defense counsel's objections during cross-examination of Appellant's brother was not apparent because the Commonwealth had asked a substantially similar question during cross-examination of Appellant's mother (who testified **prior** to

- 8 -

Appellant's brother)[4] and during cross-examination of Appellant's sister, without any objection from defense counsel. The context of defense counsel's objection during cross-examination of Appellant's sister was similarly not apparent from the context of the proceedings. Thus, Appellant's evidentiary challenges are arguably waived on appeal. *See* Pa.R.E. 103(a)(1)(B); *Duffy, supra*.

Moreover, even if properly preserved, the challenged testimony was only cumulative of other properly admitted evidence. Specifically, the Commonwealth introduced evidence that Appellant was charged with and on trial for murder, police recovered a .45-caliber handgun under Appellant's bed during execution of a search warrant, and Appellant admitted ownership of the handgun in his statement to police. Consequently, to the extent the court permitted improper impeachment testimony, the error was harmless. *See Passmore, supra*. Therefore, Appellant's second issue would merit no relief even if properly preserved. Accordingly, we affirm.

Judgment of sentence affirmed.

_____

[4] During cross-examination of Appellant's mother, the prosecutor asked the following questions, *inter alia*, without any objections from defense counsel: (1) "Would it surprise you to learn that [a gun] was found under your son's bed when they did that search warrant"; (2) "Would it surprise you to learn that it was loaded with ten rounds?"; (3) Would it surprise you to learn that there was a box of bullets found in the drawer where you said there was a shirt? (*See* N.T., 4/9/14, at 179-80.)

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/17/2017

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF
PENNSYLVANIA

v.

RONNIE BRADLEY,
APPELLANT

CP-51-CR-0006748-2010 Comm. v. Bradley, Ronnie
Opinion



7482333561

CP-51-CR-0006748-2010

**FILED**

AUG 0 3 2016

Criminal Appeals Unit
First Judicial District of PA

SUPERIOR CT: 2219 EDA 2016

**OPINION**

RANSOM, J.                                                                          August 3, 2016

On April 11, 2014, the Appellant, Ronnie Bradley, was found guilty, by a jury sitting before this Court, of one (1) count of First Degree Murder[1], a felony of the first degree; one (1) count of Conspiracy, a felony of the first degree; one (1) count of Possession of an Instrument of Crime[2], a misdemeanor of the first degree; and Violation of the Uniform Firearms Act § 6106[3] and 6108[4], a felony of the third degree and a misdemeanor of the first degree, respectively.

On April 11, 2014, this Court sentenced the Appellant to life imprisonment for the Murder, plus ten to twenty (10-20) years of incarceration to run concurrent for the Conspiracy, with no further penalty assessed for the additional charges. On April 17, 2014, Appellant filed a timely post-sentence motion which was denied by operation of law on July 16, 2014.

On August 13, 2014, the Appellant filed a notice of appeal docketed as 2249 EDA 2014. When the notes of testimony became available, this Court ordered the Appellant, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) to file a self-contained and intelligible statement of errors complained of on appeal on August 25, 2014. On September 15, 2014,

---

[1] 18 Pa.C.S. § 2502(a).
[2] 18 Pa.C.S. § 907(a).
[3] Firearms Not to be Carried Without a License, 18 Pa.C.S. § 6106(a)(1).
[4] Carrying Firearms in Public in Philadelphia, 18 Pa.C.S. § 6108.

counsel filed a timely 1925(b) statement of errors complained of on appeal to this Court. In his 1925(b) statement, Appellant raised the following six (6) issues, copied verbatim:

(1) That the Defendant should be awarded an arrest of judgment on the charge of third degree murder and all related offenses, as the evidence is insufficient to sustain the verdict. The Commonwealth did not prove, beyond a reasonable doubt that the Defendant was a principal, criminal conspirator or an accomplice in the murder. Moreover, the Commonwealth did not establish that the Defendant acted with malice, nor with premeditation, nor with the specific intent to kill.

(2) The Defendant must receive a new trial on the charge of third degree murder and all related offenses, as the evidence is not supported by the greater weight of the evidence. Rather, the verdict was based on nothing more than speculation, conjecture and surmise. The greater weight did not establish that the Defendant was a doer, a criminal conspirator or an accomplice.

(3) The Defendant should be awarded a new trial as the Court erred when it denied the Defendant's Motion to Suppress the Defendant's out-of-court statement, which was not given in a knowing, intelligent and voluntary fashion.

(4) The Defendant should receive a new trial as the Court erred when it prohibited the defense from introducing evidence of the Defendant's mental health deficits or problems in an effort to demonstrate that his out-of-court statement was not given in a knowing, intelligent and voluntary fashion and, specifically, this is aimed at the Court's refusal to permit such testimony at the Defendant's trial. (Notes of Transcripts, 04/09/2014).

(5) The Defendant should be awarded a new trial as the Court erred when it failed and refused to give a jury instruction pursuant to Standard Criminal Jury instruction 4.07-B.

2

(6) The Defendant should be awarded a new trial as the Court erred when it failed and refused to give a jury instruction pursuant to Standard Criminal Jury Instruction 4.08-A.

This Court filed an Opinion responding to Appellant's six (6) issues on October 3, 2014, however the appeal was dismissed for failure to file briefs on May 6, 2015. Appellant filed a timely *pro se* Post Conviction Relief Act[5] (PCRA) Petition on December 9, 2015, and on June 17, 2016, Stephen T. O'Hanlon, Esquire filed an Amended PCRA Petition on Appellant's behalf. On July 8, 2016, Appellant's PCRA was granted, his appellate rights were reinstated *nunc pro tunc*, and the instant appeal ensued. This Court rests on its previous Opinion featured below.

## FACTS

On October 4, 2008 at approximately 7:30 P.M., Appellant, Ronnie Bradley and Khashion Garland ("Garland") also known as "Putt", drove west on Parkland Avenue ("Pratt Street") looking for someone to rob. Jamil Davis ("Davis"), also known as "Mil", Nafis Golphin ("Golphin"), and decedent, Marquel Colbert ("Colbert"), also known as "Marq", were seated on the front steps of a friend's house on the 1300 block of Pratt Street conversing and listening to music. Appellant stopped his car abruptly after seeing Davis, Golphin, and Colbert. Appellant and Garland exited the car in the middle of the street and approached Davis, Golphin, and Colbert. Appellant knew Davis from Lincoln High School, and greeted him before he drew a .45 caliber gun and began to give Davis directives. Garland drew a .40 caliber gun and pointed it in the direction of Davis, Golphin, and Colbert. Davis, who was sitting on the bottom step with Golphin, stood up as if acquiescing to Appellant's directives, then Davis ran east down Pratt Street. Golphin ran in the same direction. While trying to run in the same direction, Colbert was shot one (1) time in the bottom of his right foot, two (2) times in his left buttock, and once (1) in

---

[5] 42 Pa.C.S. §9541 et seq.

3

his upper left buttock. Appellant and Garland collectively fired twenty (20) rounds at the Davis, Golphin, and Colbert. Appellant and Garland returned to Appellant's car and drove off.

Once the shots ceased, Golphin returned to the steps where he had been seated and found Colbert laying on the ground. Colbert was placed in the backseat of a friend's vehicle and died on the way to Aria Health-Torresdale hospital. An autopsy performed by Deputy Chief Medical Examiner Gary Collins, determined that the cause of Colbert's death was multiple, penetrating gunshot wounds which caused extensive internal damage. The manner of death was homicide. A warrant for Appellant's arrest was executed on October 6, 2008 at his home on Megaree Street, and a subsequent search warrant revealed a .45 caliber gun and a factory ammunition box with twelve (12) cartridges of .40 caliber Smith & Wesson bullets. Both pieces of ballistic evidence retrieved at Appellant's home matched fired cartridge casings recovered at the scene of the shooting.

## LEGAL DISCUSSION

The Appellant raises six (6) issues on appeal. The first (1) issue Appellant raises is: **That the Defendant should be awarded an arrest of judgment on the charge of third degree murder and all related offenses, as the evidence is insufficient to sustain the verdict.* The Commonwealth did not prove, beyond a reasonable doubt that the Defendant was a principal, criminal conspirator or an accomplice in the murder. Moreover, the Commonwealth did not establish that the Defendant acted with malice, nor with premeditation, nor with the specific intent to kill.**

---

* Appellant was convicted of First Degree Murder, not Third Degree as noted in issues One and Two raised on appeal.

4

The standard of review for a sufficiency of evidence claim is "whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses beyond a reasonable doubt." Commonwealth v. Miller, 541 Pa. 531, 540, 664 A.2d 1310, 1314 (1995) (citing Commonwealth v. Carpenter, 511 Pa. 429, 435, 515 A.2d 531, 533-534 (1986)). When reviewing sufficiency of the evidence, an appellate court may not substitute its judgment for that of the fact-finder; if the record contains support for the verdict, it may not be disturbed. See Commonwealth v. Marks, 1997 Pa. Super. LEXIS 3857, 4, 704 A. 2d 1095, 1098 (1997). What may appear unlikely to a reviewing court cannot supplant what the fact finder has found. Commonwealth v. Jackson, 506 Pa. 469, 474, 485 A.2d 1102, 1104 (Pa. 1984).

Generally, a Conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator, and (3) an overt act in furtherance of the conspiracy. Commonwealth v. Hatchin, 709 A.2d 405, 409 (Pa. Super. 1998). A person is guilty of an offense if it is committed by the conduct of another person for which he is legally accountable.[6] A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the offense.[7] A person is an accomplice of another person in the commission of an offense if with the intent of promoting or facilitating the commission of the offense, he aids such other person in planning or committing it.[8]

The Appellant was charged with, and found guilty of, First Degree Murder, which will be addressed accordingly. A criminal homicide constitutes Murder of the first degree when it is

---

[6] 18 Pa.C.S § 306(b)(3)
[7] Id.
[8] 18 Pa.C.S § 306(c)(1)(ii)

5

committed by an intentional killing.[9] An intentional killing is a killing by means of . . . any kind of willful, deliberate and premeditated killing.[10] To prove a charge of First Degree Murder, the Commonwealth must establish that Appellant had the specific intent to kill. Specific intent may be reasonably inferred from the use of a deadly weapon on a vital part of the victim's body. Id. A "deadly weapon" is defined as any device which, in the manner in which it is used, is likely to produce death or serious bodily injury.[11] Thus, when someone fires a handgun at another, it is assumed the intent was to inflict serious bodily injury or death. Commonwealth v. Robinson, 817 A.2d 1153, 1160 (Pa. Super 2003).

In the instant case, the Commonwealth presented sufficient evidence to sustain a conviction on all counts as recited in this Opinion. The Commonwealth presented evidence through testimony of its witness, that the Appellant was the perpetrator of these crimes. At trial, eye-witness Golphin identified Appellant both in direct testimony (N.T. 4/8/14 at 129) and in a photo array by circling Appellant's picture Id. at 147.

Testimony presented at trial showed that Appellant and Garland exited the car together, held Davis, Golfin and Colbert at gunpoint together, and both shot at the three young men as they ran away. Id. at 125. The jury was also free to believe the testimony presented that Garland did not act alone and conspired with Appellant to commit the aforementioned acts.

Intent to kill can be reasonably inferred from the actions taken by the Appellant in the instant case. Testimony was given at trial stating that the Appellant shot at Davis, Golfin and Colbert. Id. One can infer from this action that Appellant had the requisite intent to kill at that time. The fact that Colbert was hit three (3) times in the left buttock and once (1) in the foot

---

[9] 18 Pa.C.S § 2502(a)
[10] 18 Pa.C.S § 2502(d)
[11] See 18 Pa.C.S.A. § 2301

6

shows that the shooter's actions were likely to kill, and death was a probable and ordinary consequence of his actions.

The second (2) issue Appellant raises is:

**The Defendant must receive a new trial on the charge of third degree murder and all related offenses, as the evidence is not supported by the greater weight of the evidence. Rather, the verdict was based on nothing more than speculation, conjecture and surmise. The greater weight did not establish that the Defendant was a doer, a criminal conspirator or an accomplice.**

The Appellant contends that the verdict was against the weight of the evidence. This contention lacks merit. The standard of appellate review for a claim that the verdict was against the weight of the evidence is limited to a determination of whether the trial court abused its discretion in denying the Appellant's post-verdict motion i.e. that the fact-finder's verdict "shocked the conscious." Commonwealth v. Lloyd, 2005 Pa. Super. 236, P12, 878 A.2d 867, 872 (2005). The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Commonwealth v. Small, 559 Pa. 423, 435, 741 A.2d 666, 672 (Pa. 1999). A new trial should not be granted because of a mere conflict in testimony or because the trial judge would have arrived at a different conclusion on the same facts. Commonwealth v. Brown, 538 Pa. 410, 648 A2d. 1177, 1191 (Pa. 1994).

In the instant case, the jury's verdict of guilty does not shock the conscience. Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence presented at trial

7

was sufficient to support the verdict.[12] The jury, as the fact finder, has the sole discretion of assessing the credibility of witnesses at trial. The finder of fact is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. See discussion of Appellant's first issue. Additionally, the .45 caliber gun found at the Appellant's home matched the .45 caliber fired cartridge casings at the scene of the shooting. The verdict was not against the weight of the evidence.

The third (3) issue Appellant raises is:

**The Defendant should be awarded a new trial as the Court erred when it denied the Defendant's Motion to Suppress the Defendant's out-of-court statement, which was not given in a knowing, intelligent and voluntary fashion.**

The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion. Commonwealth v. Bardo, 709 A.2d 871, 878 (Pa. 1998). Admissibility depends on relevance and probative value. Commonwealth v. Bullock, 948 A.2d 818, 827 (Pa. Super. 2008). Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Id.

The determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. Miranda v. Arizona, 384 U.S., at 475–477, 86 S.Ct., at 1628–1629. The voluntariness

---

[12] The Appellant was charged with, and found guilty of, First Degree Murder.

8

of a consent or an admission and a knowing and intelligent waiver are discrete inquiries. Edwards v. Arizona, 451 U.S. 477, 484 (1981) citing Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

The Appellant asserted that his signed statement to Detective Pitts was not given in a knowing, intelligent and voluntary fashion due to Appellant's low reading level, Attention Deficit Hyperactivity Disorder, history of enrollment in special education classes, and various mental health diagnoses that resulted in treatment in an array of mental health facilities. However, Appellant's failure to prove a deficiency in his comprehension abilities at the time of the statement and Appellant's outward indication of understanding, lead this Court to disagree.

At the suppression hearing, the Appellant's mother, Beatrice Randolph ("Randolph"), testified that Appellant received mental health services from ten (10) separate institutions prior to October 6, 2008, and was enrolled in special education classes from sixth grade until he stopped going to school in the ninth grade. (N.T. 4/7/14 240-241). The Appellant did not enter any additional evidence to establish the status of his mental health at the time of the statement, or demonstrate how his mental health would have rendered him unable to make a knowing, intelligent and voluntary statement. Appellant testified that he was able to read and write at a fourth grade level at the time he gave the statement to Detective Pitts. Id. at 210. No additional evidence was offered verifying the Appellant's reading level at the time of the statement. Appellant's failure to prove his diminished mental health and low reading level, characteristics unseen by police at the time he gave the statement, forced this Court to rely on Appellant's outward manifestations of comprehension to determine if his statement was given in a knowing, voluntary and intelligent manner.

9

Appellant was given Miranda[13] warnings verbally, asked a series of seven (7) questions to confirm his understanding of the contents of the Miranda warnings, signed the statement in nine (9) different places, and initialed the document seven (7) times. Id. at 227. In addition to coherently responding to Detective Pitts' questions, Appellant also identified a photograph of Garland, who was named in Appellant's statement. Id. at 178. When asked to review his statement before attesting to the veracity of its contents, Appellant was also asked to read a few sentences of the statement out loud so the attending police officers would know he could read. Id. at 195.

This Court found that while the Appellant may have had some mental health diagnoses which led him to be in several mental health treatment facilities, his answers to questions posed by police were responsive, and his signatures throughout the four (4) page statement established that it was knowingly, voluntarily, and intelligently made. (N.T. 4/8/14 at 35). The Appellant did not provide this Court with sufficient information to grant the ruling the Appellant requested. The information in the Appellant's statement was relevant to the proceedings, and made the fact of his and Garland's involvement in the death of Colbert, a material fact in the case, more probable.

The fourth (4) issue Appellant raises is:

**The Defendant should receive a new trial as the Court erred when it prohibited the defense from introducing evidence of the Defendant's mental health deficits or problems in an effort to demonstrate that his out-of-court statement was not given in a knowing, intelligent and voluntary fashion and, specifically, this is aimed at the Court's refusal to permit such testimony at the Defendant's trial. (Notes of Transcripts, 04/09/2014).**

---

[13] A person must, before any questioning, be warned that he has right to remain silent, that any statement he does make may be used as evidence against him, and that he has right to presence of attorney, retained or appointed.

10

This Court entered a ruling on the Appellant's out-of-court statement and found that the statement should not be suppressed because it was knowingly, voluntarily and intelligently made. See issue three (3). Furthermore, pursuant to Rule 568(A)(1) of the Pennsylvania Rules of Criminal Procedure regarding notice of defense of insanity or mental infirmity:

> A defendant who intends to offer at trial the defense of insanity or mental infirmity shall file with the clerk of courts not later than the time required for filing an omnibus pretrial motion provided in Rule 579 a notice of the intention to offer the defense of insanity or mental infirmity, and shall serve a copy of the notice and a certificate of service on the attorney for the Commonwealth.
>
> (b) The notice shall contain specific available information as to the nature and extent of the alleged insanity or mental infirmity, the period of time that the defendant allegedly suffered from such insanity or mental infirmity, and the names and addresses of witnesses, expert or otherwise, whom the defendant intends to call to establish such defense.

Pursuant to Rule 568(B)(1):

> If the defendant fails to file and serve a notice of insanity or mental infirmity defense . . .the court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make any other order as the interests of justice require.

In the instant case, the Appellant did not provide the requisite notice to present a mental infirmity defense at trial. The Commonwealth and this Court were both made aware of the specific information as to the nature and extent of the alleged mental infirmity and the period of time that the defendant allegedly suffered from such mental infirmity on April 7, 2014 during jury selection. (N.T. 4/7/14 at 102-156). This information was not included in Appellant's omnibus pretrial motion. The Appellant was therefore precluded from introducing a mental infirmity defense at trial unless as offered by the Appellant's own testimony.

11

Appellant's fifth (5) and sixth (6) issues will be addressed simultaneously. The fifth (5) and sixth (6) issues Appellant raises are:

**The Defendant should be awarded a new trial as the Court erred when it failed and refused to give a jury instruction pursuant to Standard Criminal Jury instruction 4.07-B.**

**The Defendant should be awarded a new trial as the Court erred when it failed and refused to give a jury instruction pursuant to Standard Criminal Jury Instruction 4.08-A.**

These contentions are without merit. The nature of the court's instructions to the jury is within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved." Commonwealth v. Hartey, 424 Pa.Super. 29, 621 A.2d 1023, 1028 (1993). The main concern is "that the charge clearly, adequately, and accurately presents the law to the jury for its consideration." Commonwealth v. Collins, 810 A.2d 698, 701 (Pa.Super.2002).

Standard Criminal Jury Instruction 4.07B relates to identification testimony, accuracy and doubt. In a previous hearing, Golphin indicated that the photograph he picked out of a photo array was that of the person in the courtroom at the time, Garland, and the picture was actually of Appellant. (N.T. 4/8/14 168-176). Subsequently on redirect, Golphin clearly identified Appellant in the courtroom during the instant trial. Id. at 129. This in-court identification resolved any inconsistency in Golphin's prior hearing testimony.

Standard Criminal Jury Instruction 4.08A relates to impeachment or substantive evidence and inconsistent statements. In a previous hearing, Golphin testified that the shooter closest to him was Garland and subsequently testified at the instant trial that Appellant was the shooter closest to him. Id. at 172. Golphin did not at any prior time identify anyone other than Appellant

12

and Garland, and in both cases identified both Appellant and Garland as the shooters. Additionally, Appellant's proximity to Golphin was not a material fact in the case.

At the close of the instant trial, the jury charges included instruction on witness credibility in three (3) places. (N.T. 4/10/14 at 32, 44, 101). The jury was adequately charged on the legal principles. The jury, as the fact finder, was free to believe all, part, or none of the evidence and to determine the credibility of Golphin. It was within this Court's domain to apply the facts, as it discerned, to the law of the case.

## **CONCLUSION**

For the reasons set forth above, the decision of this Court should be affirmed.

BY THE COURT:

Ransom, J.

13

**Re:** **Commonwealth v. Ronnie Bradley**
**CP-51-CR-0006748-2010**
**2219 EDA 2016**


**TYPE: OPINION**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defendant: Ronnie Bradley
LM4289
SCI Rockview
Route 26, 1 Rockview Place
Bellefonte, PA 16823

Type of Service: ( ) Personal Service ( ) First Class Mail ( X ) Other: <u>Certified</u>

Defense Counsel: Stephen O'Hanlon, Esquire
1500 JFK Boulevard
Suite 1850
Philadelphia, PA 19102

Type of Service: ( ) Personal Service ( X ) First Class Mail ( ) Other: _____

District Attorney: Hugh J. Burns, Esquire
Philadelphia District Attorney's Office
Widener Building - Three South Penn Square
Philadelphia, PA 19107

Type of Service: ( ) Personal Service ( X ) First Class Mail ( ) Other: _____


Date: <u>August 3, 2016</u>


Tianna K. Kalogerakis, Esq.
Law Clerk to the Hon. Lillian Harris Ransom