J-S45004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KASHYISM MANSON | : | |
| | : | |
| Appellant | : | No. 854 EDA 2016 |

Appeal from the Judgment of Sentence November 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013137-2011

BEFORE: GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED AUGUST 15, 2017**

Appellant, Kashyism Manson, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions of burglary, conspiracy, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, possessing instruments of crime, five counts of robbery, and his bench trial conviction of persons not to possess firearms.[1] We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. We add only that the jury also convicted Appellant of

_____

[1] 18 Pa.C.S.A. §§ 3502(a), 903, 6106(a)(1), 6108, 907(a), 3701(a)(1)(ii), and 6105(a)(1), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

possessing instruments of crime.

Appellant raises one issue for our review:

> DID THE SUPPRESSION COURT ERR BY REFUSING TO SUPPRESS THE GUN FOUND ON [APPELLANT'S] PERSON WHERE THE POLICE RIPPED [APPELLANT] OUT OF HIS CAR, THREW HIM TO THE GROUND, AND SEARCHED HIM WITHOUT ARTICULATING ANY REASONABLE BELIEF THAT [APPELLANT] PRESENTED AN IMMEDIATE SAFETY RISK TO THE POLICE OR ANYONE ELSE?

(Appellant's Brief at 4).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Williams**, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 115 (Pa.Super. 2005)).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Williams, supra** at 27 (quoting **Jones, supra**).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Susan I. Schulman, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question

- 2 -

presented. (*See* Trial Court Opinion, filed September 23, 2016, at 5-11) (finding: Officer Waters observed Appellant and two passengers exit vehicle that Appellant had just parked in laundromat parking lot; Officer Waters observed passenger remove handgun from his waistband and throw it onto rear floor of vehicle; when Appellant saw officers approaching, Appellant entered vehicle and tried to start it; at this point, Officer Waters was concerned not only about stopping vehicle before Appellant could flee, but also for his own safety because Officer Waters had observed gun in vehicle; Officer Waters and his partner immediately pulled Appellant from vehicle; Appellant repeatedly attempted to reach into his right pants pocket while police removed him from vehicle; concerned for their safety, officers subdued Appellant, searched his right pants pocket, and recovered handgun; fluid situation confronting officers in this case was that Appellant attempted to flee in vehicle with gun inside; detention of Appellant was appropriate under these circumstances, where officers had reasonable suspicion to detain Appellant when they saw his companion place gun inside vehicle; officers used physical force to prevent Appellant from fleeing with weapon, which did not automatically convert ***Terry***[2] stop into arrest; physical detention was reasonable, particularly where Officer Waters knew firearm was in Appellant's immediate vicinity; officers' subsequent search of

---

[2] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Appellant's right pants pocket was also reasonable as Appellant repeatedly tried to reach into his pocket during removal from vehicle; facts immediately facing officers demanded rapid response in light of observed firearm and justified officers' actions of physically forcing Appellant to ground and conducting limited search of pocket; court properly denied suppression motion). Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :     CP-51-CR-0013137-2011

                VS.                :

KAYSHISM MANSON                 :

                                   :     854 EDA 2016

## OPINION

SCHULMAN, S.I., J.

Kayshism Manson ("Appellant") appeals the suppression court's order denying his motion to suppress physical evidence. This Court submits the following opinion pursuant to Pa. R.A.P. No. 1925 and recommends that Appellant's appeal be denied.

## PROCEDURAL HISTORY

Appellant was charged with five counts of robbery (18 Pa. C.S. § 3701), one count of burglary (18 Pa. C.S. § 3502), one count of conspiracy to commit robbery (18 Pa. C.S. § 903), and violating sections 6105, 6106, and 6108 of the Uniform Firearms Act (18 Pa. C.S. §§ 6105, 6106, and 6108). Prior to trial, Appellant brought a motion to suppress physical evidence before the Honorable Donna M. Woelpper. Following the suppression hearing, Judge Woelpper advised she would hold the matter "under advisement" and issue a decision before trial. (N.T., 10/19/12, pg. 44). On November 6 2012, Judge Woelpper entered an order denying Appellant's motion.

Trial commenced before this Court on May 28, 2013, and it concluded on June 3, 2013, when the jury convicted Appellant of all the above charges. Immediately after the jury trial, this Court held a bench trial on the charge of violating section 6105 of the Uniform Firearms Act and found Appellant guilty of this charge as well. Following a hearing on November 8, 2013, this

CP-51-CR-0013137-2011 Comm. v. Manson, Kashyism
Opinion



7503600581

1

Court sentenced Appellant to an aggregate term of fifteen (15) to thirty (30) years' incarceration. (N.T., 11/8/13, pgs. 34-36). Appellant filed a motion for reconsideration of sentence on January 23, 2014, which this Court denied on January 31, 2014.

Appellant filed no direct appeal, but on June 9, 2014, he filed a petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* Appellant's PCRA counsel filed an amended petition on May 14, 2015, seeking *nunc pro tunc* reinstatement of Appellant's right to file a direct appeal. Appellant alleged that he requested his trial counsel to file a direct appeal during and after his sentencing hearing, but that counsel rendered ineffective assistance by failing to file the appeal.

On February 23, 2016, this Court granted Appellant's petition to file a direct appeal *nunc pro tunc.* On March 14, 2016, Appellant filed a notice of appeal, and on or around August 31, 2016, Appellant filed a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). Appellant's Rule 1925(b) Statement challenges only Judge Woelpper's ruling on Appellant's motion to suppress physical evidence.

## MATERIAL FACTS

Judge Woelpper conducted the suppression hearing at which Appellant sought to exclude physical evidence recovered from his person (*i.e.*, a loaded handgun). The Commonwealth presented the testimony of Philadelphia Police Officer, Charles Waters ("Officer Waters"), who recovered the challenged evidence.

Officer Waters testified that on August 24, 2011, he was on patrol with his partner, Officer Hilbert, on the 2100 block of Diamond Street in the city and county of Philadelphia, Pennsylvania. Officer Hilbert was driving a marked patrol car while Officer Waters "was the recorder" in the vehicle's front passenger seat. (N.T., 10/19/12, pgs. 14-16). Around 6:20 p.m.,

2

Officer Waters observed Appellant parking a vehicle in a laundromat parking lot. Two males were passengers in the vehicle. From around fifteen feet (15') away, Officer Waters saw Appellant and his passengers exit the vehicle, and he then saw one of the passengers pull a handgun from his waistband and throw it onto the vehicle's rear floor. The officers therefore pulled into the parking lot and exited their patrol car. Because the vehicle that Appellant had been driving contained a gun in its passenger compartment, which "[a]bsolutely" was in arm's reach of someone seated in the driver's seat, Officer Waters's immediate "intention was to stop that vehicle so it didn't take off." (Id. at pgs. 16-17, 19).

As the officers approached, Appellant's two companions walked inside the laundromat. Appellant, on the other hand, looked at the approaching officers and then "got back into the driver's seat," inserted a key into the vehicle's ignition, and "attempted to start the vehicle." At that point Officer Waters was "concerned" not only about "stopping" the vehicle before Appellant could flee, but also about his own safety "because [he] had seen a gun" thrown inside the vehicle. Officer Waters and his partner therefore "immediately pulled [Appellant] out of the car." (N.T., 10/19/12, pgs. 18, 20, 29, 37).[1]

While being physically removed from the vehicle, Appellant repeatedly "attempt[ed] to reach into his right front pants pocket." Although Officer Waters "didn't know why [Appellant] was reaching into his pocket," he already knew there was at least one gun in Appellant's vicinity and was concerned for the safety of himself and his partner. The officers therefore "threw"

---

[1] On direct examination, Officer Waters testified that the officers first instructed Appellant "to step out of the vehicle." However, on cross-examination, Officer Waters testified he "didn't' instruct [Appellant] at all" to exit the vehicle, but rather "immediately pulled him out of the car." (Id. at pgs. 17, 33).

3

Appellant to the ground, searched his right pocket, and recovered therefrom "a 22 caliber handgun." (Id. at pgs. 20, 34-38).[2]

Upon "secur[ing]" Appellant and "recover[ing] the gun from his pocket," the officers inquired whether the vehicle belonged to him. Appellant "was being real uncooperative" so the officers "ran the vehicle" through the police database, and "[i]t came back to a male that wasn't [Appellant]." Officer Waters subsequently spoke to the vehicle's owner who "stated that the car had been stolen and he hadn't reported it yet." (Id. at pgs. 19-20).

At the hearing's conclusion, Judge Woelpper "h[e]ld the decision under advisement," and on November 6, 2012, Judge Woelpper entered an order denying Appellant's suppression motion.

## ISSUES RAISED ON APPEAL

Appellant raises the following issues in his Rule 1925(b) Statement:

"1. The suppression court erred by refusing to suppress all physical evidence seized from Defendant and *his vehicle*. In particular:

    A.    The police lacked reasonable suspicion to conduct an investigatory detention before seizing Defendant; and,

    B.    The officer failed to articulate a reasonable belief that Defendant presented a threat to his safety before he physically dragged Defendant out of his vehicle and threw him onto the ground. See, N.T. 10/19/12 at 31-32."

(See Appellant's Rule 1925(b) Statement, emphasis supplied).

At the suppression hearing, Appellant withdrew his challenge to the "physical evidence seized from ... his vehicle," in light of the fact that the vehicle was not "his vehicle" but was stolen. Appellant elected not to contest this evidence because he "did not have an ownership or

---

[2] The officers also recovered the gun that Appellant's companion had thrown inside the vehicle. (Id. at pg. 32).

4

possessory interest in the vehicle." Rather, Appellant sought to suppress only the handgun recovered from his person. Appellant's counsel explained:

> Your Honor, in this case I'm seeking to suppress any and all items that were recovered from [Appellant's] person. Initially the motion that had been filed in this case was one seeking to suppress any contraband or items recovered from the search of a motor vehicle in which [Appellant] is alleged to have been the operator of that vehicle.

> The Commonwealth is prepared to put on evidence today that the vehicle was in stolen status, and that [Appellant] did not have an ownership or possessory interest in the vehicle. In light of those representations and the proof of that, which the Commonwealth has shared with me, I will not make argument at this time as to the items recovered from the search of the vehicle.

> However, prior to the search of the vehicle or sometime during the incident, my client was detained by police. And I'm arguing that the detention of my client and the search of my client violated his Fourth Amendment rights pursuant to the United States Constitution, and also to the concomitant version of the Pennsylvania Constitution, Article 8, which is more protective than the Federal Constitution. So that is the basis of my motion.

> And the item which was recovered from my client was a handgun. There may be additional items that I'm not aware of. But as far as I know, it was a handgun. And I'm seeking to suppress the handgun.

(N.T., 10/19/12, pg. 5).

Appellant thus waived any direct challenge to the physical evidence seized from the stolen vehicle. See Pa. R.A.P. No. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); Commonwealth v. Muniz, 5 A.3d 345, 352 (Pa. Super. 2010) (Issues not argued to the lower court are waived on direct appeal). Appellant's only non-waived challenge is to the handgun recovered from his person.

## DISCUSSION

"Where an officer reasonably suspects that criminal activity is afoot, the officer may temporarily freeze the status quo by preventing the suspect from leaving the scene in order to ascertain his identity and gather additional information." In the Interest of D.M., 556 Pa. 160,

5

164 (Pa. 1999). "The officer may also conduct a quick frisk for weapons if he reasonably fears that the person with whom he is dealing may be armed and dangerous." Id. A court's inquiry into whether police officers possessed reasonable suspicion to conduct an investigatory detention "is a dual one – whether the officers' action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Commonwealth v. Zhahir, 561 Pa. 545, 552 (Pa. 2000).

"Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot." Zhahir, 561 Pa. 545, 552. "The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." Id. "This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability." Id. "Because street encounters are so incredibly rich in diversity, each case is to be scrutinized in light of its own facts." Commonwealth v. Whelton, 465 A.2d 1043, 1049 (Pa. Super. 1983).

"[T]he delicate balance between protecting the rights of citizens to be free from unreasonable searches and seizures, on the one hand, and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime, on the other hand, requires additional considerations when the police have a reasonable suspicion that a person may be armed." Commonwealth v. Stevenson, 894 A.2d 759, 771 (Pa. Super. 2004). Recognizing "the importance of these competing governmental interests,

6

particularly where the safety of police officers is concerned," the United States Supreme Court stated:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.
>
> *In view of these facts, we cannot blind ourselves to the need of law enforcement officers to protect themselves and other prospective victims of violence in situations where they lack probable cause for an arrest.* When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

Id. at 771-772 (quoting Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)) (emphasis added by Superior Court).

"[T]he safety concerns of police and other citizens are of a continuing nature, given the sober truth that many of our streets are now infinitely more dangerous for citizens and police officers alike than they were in 1968 when the U.S. Supreme Court decided *Terry*," and in 1969 when the Pennsylvania Supreme Court adopted the *Terry* test in Commonwealth v. Hicks, 434 Pa. 153, 158-159 (1969). Stevenson, 894 A.2d 759, 771-772. *Terry* and *Hicks* caution that courts "must be guided by common sense concerns that give preference to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." Id. (emphasis in original). "[P]olice safety, and the safety of other citizens, must always be afforded great weight when balanced against the privacy

7

rights of an individual during an investigatory detention and pat down or frisk for weapons when the police have a reasonable suspicion that an individual is armed." Id.

Accordingly, under *Terry*, "[p]ossession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed." Stevenson, 894 A.2d 759, 772 (citation omitted here). Moreover, "[a]n officer may use reasonable physical force under the circumstances to effect a *Terry*-stop without converting the stop into an arrest." United States v. McGrath, 89 F. Supp. 2d 569, 577-578 (E.D. Pa. 2000) *aff'd at* 2003 U.S. App. LEXIS 23039 (3d Cir. 2003) (citing United States v. Hensley, 469 U.S. 221, 235 (1985)). "So long as the circumstances warrant the precautions, such conduct ... does not necessarily exceed the bounds of a *Terry*-stop." Id. "Just as a full search incident to a lawful arrest requires no additional justification, a limited frisk incident to a lawful stop must often be rapid and routine." Commonwealth v. Prengle, 437 A.2d 992, 995 (Pa. Super. 1981) (quoting *Terry*, 392 U.S. 1, 33). Thus "[t]here is no reason why an officer rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet." Id.; Commonwealth v. Lagana, 517 Pa. 371, 377 (Pa. 1998); In the Interest of D.M., 556 Pa. 160, 166.

In this case, Officer Waters observed Appellant and his two passengers exit a vehicle that Appellant had just parked in a laundromat parking lot. Officer Waters saw one of the passengers pull a handgun from his waistband and throw it onto the vehicle's rear floor. Appellant then looked at the approaching officers and "got back into the driver's seat and attempted to start the vehicle." At this point Officer Waters was "concerned" not only about "stopping" the vehicle before Appellant could flee, but also about his own safety "because [he] had seen a gun" thrown

8

into the vehicle. Officer Waters and his partner therefore "immediately pulled [Appellant] out of the car." (N.T., 10/19/12, pgs. 18, 20, 29, 37). While removing Appellant from the vehicle, Officer Waters saw him repeatedly "attempt to reach into his right front pants pocket." Although Officer Waters "didn't know why [Appellant] was reaching into his pocket," he already knew there was at least one gun in Appellant's vicinity and was concerned for the safety of himself and his partner. The officers therefore "threw" Appellant to the ground, searched his right pocket, and recovered therefrom "a 22 caliber handgun." (Id. at pgs. 20, 34-38).

Whether the officers' conduct comported with *Terry* "must be based on commonsense judgments and inferences about human behavior." In the Interest of M.D., 781 A.2d 192, 199 (Pa. Super. 2001) (citations omitted here). The fluid situation confronting the officers was that Appellant possessed a handgun in the vehicle that he occupied, and that Appellant attempted to flee the approaching officers with the gun and vehicle. Under these circumstances, the officers' physical detention of Appellant was more than reasonable. There is no question that the officers possessed reasonable suspicion to detain Appellant when they knew his companion had placed a gun inside the vehicle that Appellant had just parked, exited, and then reentered immediately upon seeing the police. Stevenson, 894 A.2d 759, 772 ("Possession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed"); Commonwealth v. Mason, 130 A.3d 148, 153 (Pa. Super. 2015) (Under section 6106 of the Uniform Firearms Act, there is no difference "between an individual who is concealing a firearm on his person and one who is carrying a firearm in his vehicle"). Furthermore, it was entirely reasonable for Officer Waters to conclude that Appellant attempted to flee with the vehicle and gun when he entered and attempted to start

9

the vehicle. That the officers used physical force to prevent Appellant from fleeing with the weapon did not convert the *Terry*-stop into an arrest. McGrath, 89 F. Supp. 2d 569, 577-578 ("An officer may use reasonable physical force under the circumstances to effect a Terry-stop without converting the stop into an arrest").

Similarly, the fact that the officers forcibly detained Appellant without first asking him any questions did not render the physical detention unreasonable, particularly since Officer Waters knew there was a firearm in Appellant's immediate vicinity when he "pulled" Appellant from the vehicle to prevent his flight. Prengle, 437 A.2d 992, 995; Lagana, 517 Pa. 371, 377; In the Interest of D.M., 556 Pa. 160, 166 ("There is no reason why an officer rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet") (quoting Terry, 392 U.S. 1, 33).

The officers' subsequent search of Appellant's pants pocket was equally reasonable. While the officers removed Appellant from the vehicle to prevent his flight, Appellant repeatedly attempted to reach his hand inside his pants pocket. As noted, by that time, Officer Waters knew there was a gun in the vicinity and he reasonably was concerned for his own safety and that of his partner. The facts immediately facing the officers, which demanded a rapid response in light of the observed firearm, justified them physically forcing Appellant to the ground and conducting a limited search of the pocket into which Appellant repeatedly attempted to reach. Stevenson, 894 A.2d 759, 771-772.

Accordingly, in light of the totality of the circumstances facing the officers, their physical detention and limited search of Appellant for weapons was reasonable, and Appellant's suppression motion was properly denied.

10

## CONCLUSION

For the reasons set forth in the foregoing Opinion, Appellant's appeal should be denied.

BY THE COURT:

DATE: 9/23/16

SUSAN I. SCHULMAN, J.

11

## PROOF OF SERVICE

I, Darece Williford, secretary to Honorable Susan I. Schulman, hereby certify that I served, on September 22, 2016 by first-class mail, postage prepaid, a true and correct copy of the foregoing Opinion on the following:

Tod Mosser, Esquire
1500 JFK Suite 1723
Philadelphia, PA 19102

Hugh Burns, ADA
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Darece Williford