J-S59008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN HANNON | : | |
| | : | |
| Appellant | : | No. 3497 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 4, 2018
In the Court of Common Pleas of Wayne County Criminal Division at
No(s):  CP-64-CR-0000366-2017

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 30, 2019**

Sean Hannon appeals from the judgment of sentence, entered in the Court of Common Pleas of Wayne County, after being convicted by a jury of two counts each of endangering the welfare of children (EWOC),[1] driving under the influence (DUI),[2] and recklessly endangering another person (REAP),[3] and one count each of the summary offenses of driving while operating privilege suspended/revoked[4] and permitting unauthorized person to drive.[5]  After careful review, we affirm.

---

[1] 18 Pa.C.S. § 4304(a)(1).

[2] 75 Pa.C.S. § 3802(a)(1) (general impairment); 75 Pa.C.S. § 3802(c) (highest rate).

[3] 18 Pa.C.S. § 2705.

[4] 75 Pa.C.S. § 1543(b)(1).

[5] 75 Pa.C.S. § 1574(a).

On November 5, 2017, at approximately 5 p.m., Hannon and his two children, an eleven-year-old daughter and eight-year-old son, were traveling in his 1999 Dodge Dakota truck. At some point, Hannon permitted his daughter to drive the vehicle. Ryan Yannone, who was driving behind Hannon's truck, noticed that the vehicle was weaving and traveling very slowly. At an intersection, the truck failed to stop at a posted stop sign. At another intersection, the truck stopped and sat on the side of the road. Upon seeing this, Yannone exited his vehicle and approached Hannon's truck where he observed Hannon's daughter in the driver's seat. When Yannone asked Hannon why the child had been driving, Hannon yelled at him to "mind [his] own f*c*ing business," and told him that his daughter "was 16 years old." N.T. Jury Trial, 7/9/18, at 53. Yannone testified that Hannon was "[l]oud, obnoxious, [and] seemed to [be] under the influence of something." *Id.* Yannone offered to get help, but the child immediately drove away.

Yannone continued to follow Hannon's vehicle as it turned onto Neville Road in Wayne County, noting that it was "just all over the road." *Id.* at 55. Hannon's truck ultimately "stopped dead in the road . . . turned right . . . and ended up under a pine tree . . . totally off the road." *Id.* At that point, Yannone watched Hannon's two children exit the truck and run up the road. *Id.* at 63. Yannone approached Hannon's truck where Hannon had "slid into the driver's seat[,] put [the vehicle] in reverse, and started backing up." *Id.* at 56. At that point, Yannone "hurried up[, reached through the truck's window,] put [the vehicle] back in park" and removed the keys from the

ignition. *Id.* at 56, 63. As Yannone called the police to have authorities come to the scene, he noticed Hannon exit his truck and slide something under the pine tree. Yannone retrieved the object, a bottle of "brandy or whiskey or something." *Id.* at 56.

Trooper Jamison Warner arrived on the scene in uniform in his patrol car.[6] He first spoke with Yannone who told him the above details; Yannone surrendered a bottle of Black Velvet whiskey (the item Hannon discarded) and Hannon's keys to the trooper. *Id.* at 69. The trooper obtained information that revealed Hannon was driving with a DUI-suspended license. N.T. *Motion in Limine* and Omnibus Hearing, 7/2/18, at 14. When Trooper Warner approached Hannon and spoke with him, Hannon initially denied that his daughter had been driving the truck and said that he had been driving. N.T. Jury Trial, 7/9/18, at 70. After the trooper told Hannon that he knew Hannon had attempted to drive his truck and that Hannon's license had been suspended, Hannon changed his story and said that he never drove the vehicle. *Id.* Trooper Warner's police report from the scene indicated that Hannon's speech was slow and slurred, he had a strong odor of alcohol on his breath, had bloodshot eyes, looked disheveled, was uncooperative, and acted "slow and sluggish." *Id.* at 71. The trooper administered several field sobriety tests which indicated Hannon was impaired. Trooper Warner testified that in his experience as a law enforcement officer, which included more than one

---

[6] Yannone testified that the Hamlin Fire Department arrived on the scene before the police. N.T. Jury Trial, 7/9/18, at 65.

hundred prior DUI-related arrests, he believed that Hannon was not capable of safe driving. *Id.* at 72.

At that point, Trooper Warner arrested Hannon and transported him to Wayne Memorial Hospital to have his blood drawn. Blood tests revealed a BAC of .228%. Hannon was then taken to PSP Honesdale where he was read his *Miranda*[7] warnings before he gave an oral statement to Trooper John Decker. N.T. Jury Trial, 7/9/18, at 83. In his statement, Hannon admitted that he had been drinking beer since 4 p.m. that day, was drunk, could not remember how much alcohol he had consumed, and that he had been driving. *Id.* at 86. At some point thereafter, Hannon told Trooper Decker that he remembered his daughter driving the truck "when some guy came up to the truck and yelled at him." *Id.* at 87. Trooper Decker testified he smelled a strong odor of alcohol on Hannon's breath when he interacted with him at the station. *Id.*

Hannon filed a pretrial motion *in limine* to suppress his statements made at the accident scene, as well as the statements he made at PSP Honesdale. On July 6, 2018, the trial court denied Hannon's pretrial motion and also granted the Commonwealth's motion *in limine* to preclude the defense from eliciting any evidence regarding Yannone's 2005 *crimen falsi* summary conviction. After a jury trial held in July 2018, Hannon was found guilty of the above-mentioned crimes. He was sentenced on October 4, 2018, to an

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

aggregate term of imprisonment of 84-180 months; the court also imposed fines, found him ineligible under the Recidivism Risk Reduction Incentive (RRRI) Act, and gave him credit for time served.[8] Hannon filed a timely post-sentence motion that was denied on October 18, 2018. Counsel filed a notice of appeal and motion to withdraw simultaneously on November 15, 2018. The trial court stayed the appeal until the status of counsel's representation was clarified.

On February 7, 2019, this Court entered an order reinstating Hannon's appeal rights and ordered the trial court rule on the motion to withdraw. On March 21, 2019, the trial court entered an order granting counsel's motion to withdraw and appointed new appellate counsel. New counsel filed a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Hannon presents the following issues for our review:

> (1)  Whether the trial court abused its discretion by denying [Hannon's] omnibus pre[]trial motion for suppression of [Hannon's] statements when [Hannon] was not advised of his ***Miranda*** rights and the questioning officer admitted to [Hannon] being questioned in custody.
>
> (2)  Whether the trial court abused its discretion by granting the Commonwealth's [m]otion in [l]imine and prejudicing [Hannon] by not allowing him to discuss the witness['s] prior record at trial.

Appellant's Brief, at 5.

> In considering the denial of a suppression motion, the appellate standard of review is well-settled. An appellate court must determine whether the record supports the suppression court's

---

[8] The trial court ordered Hannon's sentence run consecutive to a sentence he was currently serving in Lackawanna County.

factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings. In doing so, the court may consider only the prosecution's evidence and the defendant's evidence to the extent it is not contradictory. If the evidence presented at the suppression hearing supports these findings of fact, the appellate court may not reverse the [trial] court unless its accompanying legal conclusions are in error.

*Commonwealth v. By*, 812 A.2d 1250, 1254 (Pa. Super. 2002).

Hannon claims that the trial court erred in denying his motion to suppress statements[9] he made to Trooper Warner at the accident scene where he was not first *Mirandized*. Specifically, Hannon contends that because the trooper knew that Hannon's license had been suspended prior to speaking to Hannon and where the trooper testified he would not have let Hannon leave the scene, he was effectively in custody.

In order to determine whether a defendant was subject to a "custodial detention," the United States Supreme Court "had devised an objective test entailing a determination of whether, in viewing the totality of the circumstances, a reasonable person would have believed he was free to leave." *By*, 812 A.2d at 1255, *citing United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "[T]he test for a custodial interrogation does not depend upon the subjective intent of the law enforcement officer

_____

[9] In his suppression motion, Hannon argued that two separate sets of statements should not have been admitted at trial. The first set relates to his admission to Trooper Warner at the scene that he had been driving the subject vehicle at the time of the accident. The second set refers to statements he made to Trooper Decker at PSP Honesdale where a "new custodial interrogation commenced." Omnibus Pretrial Motion, 5/15/18, at ¶ 53. Hannon has abandoned any argument in his brief with regard to the statements made at the police station.

interrogator." **Commonwealth v. Williams**, 650 A.2d 420, 427 (Pa. 1994). Rather, it focuses on the individual being interrogated and whether he or she "reasonably believes [his or her] freedom of action is being restricted." **Id.**

"[S]tatements of an accused arising from a 'custodial interrogation' are inadmissible unless the prosecution shows that the procedural safeguards required by **Miranda** were afforded the accused." **Commonwealth v. Gonzalez**, 546 A.2d 26, 29 (Pa. 1988). Interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. **Commonwealth v. Williams**, 941 A.2d 14, 30 (Pa. Super. 2008) (en banc). Specifically, "the **Miranda** safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." **Id.** However, not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances are admissible even without **Miranda** warnings. Additionally individuals have a duty under the Vehicle Code to stay at the scene of an accident and identify themselves and their vehicle, as well as exhibit an operator's license and proof of insurance; these motorist responsibilities do not require **Mirandizing**. **Gonzalez**, **supra**.

In evaluating whether **Miranda** warnings are necessary, courts must consider the totality of the circumstances, which include the basis for the detention, the duration of the detention, the location of the detention, whether restraints were used, whether law enforcement showed, threatened or used

force, and the methods of investigation used to confirm or dispel suspicions. **Williams**, 941 A.2d at 31. The fact that the defendant was the focus of an investigation is relevant in determining whether he or she was in custody, but does not *per se* require **Miranda** warnings. **Id.**

Here, Trooper Warner testified that when he first approached Hannon at the accident scene, he asked him what had happened, told him he knew his license had been DUI-suspended, informed him that a witness had seen Hannon's daughter driving the vehicle before it ended up under the pine tree, and also told him that the witness told the trooper that he had observed Hannon try to get into the driver's seat in an attempt to move the vehicle after the accident. N.T. Motion *In Limine* and Omnibus Hearing, 7/2/18, at 10, 14. Trooper Warner testified that Hannon appeared unsteady on his feet during their discussion, was sweating a little bit, and had slurred speech and a strong odor of alcohol on his breath. **Id.** at 11. Hannon proceeded to fail field sobriety tests administered by the trooper and was then taken into custody and transported to Wayne Memorial Hospital to have his blood drawn. **Id.**

While Trooper Warner's physical actions were non-confrontational in nature (i.e., trooper did not restrict Hannon's freedom of movement, did not use or threaten to use any force, did not remove his weapon from his holster, did not place Hannon in handcuffs or otherwise restrain him, and did not block Hannon's path of exit), his verbal communication subjected Hannon to a custodial interrogation. Specifically, when Trooper Warner told Hannon that the witness informed him that he saw Hannon driving the car and that he

knew Hannon had a DUI-suspended license, Hannon was subjected to the functional equivalent of a custodial interrogation. Specifically, a reasonable person in Hannon's position would not have believed that he was free to leave the scene. *See Commonwealth v. Snyder*, 60 A.3d 165 (Pa. Super. 2013) (where officer's words and conduct were likely to elicit incriminating response after officer explained to defendant warrant for his arrest had been issued and that witnesses had made statements against him to police, defendant was subjected to interrogation requiring issuance of *Miranda* warnings); *Commonwealth v. DeJesus*, 787 A.2d 394 (Pa. 2001)[10] (*Miranda* warnings required before detective explained to defendant that he had been implicated in shootings and that witnesses had made statements about his involvement in shootings; detective should have known that comments and conduct were reasonably likely to evoke effort on part of defendant to defend himself and give his own version of events).

Here, Trooper Warner's statements were more than general comments intended to elicit identifying information regarding whether Hannon owned the vehicle or had proof of insurance or a license; moreover, they were not an inquiry to ascertain whether Hannon was injured or to obtain general information about the incident. *Cf. Commonwealth v. Gonzalez*, 546 A.2d 26 (Pa. 1988) (where officers ask defendant at accident scene if she was hurt and what had happened, defendant not in custody so *Miranda* warnings

---

[10] This case was abrogated on other grounds. *See Commonwealth v. Cousar*, 928 A.2d 1025 (Pa. 20017).

not required); ***Commonwealth v. Williams***, 941 A.2d 14 (Pa. Super. 2008) (where purpose of officer's questions was to obtain general information and where defendant admitted to officer at scene of accident that she was driver of vehicle before administered ***Miranda*** warning, statement did not need to be suppressed). Rather, Trooper Warner's statements made Hannon aware that he was the particular subject of a criminal investigation and that he was not free to leave the accident scene because law enforcement knew he had a suspended license.

Under such circumstances, where his statements were likely to elicit an incriminating response, Trooper Warner was required to administer Hannon his ***Miranda*** rights. ***Williams***, ***supra***. Accordingly, the prosecution was not permitted to use any statements stemming from Trooper Warner's interrogation of Hannon where he was not first ***Mirandized***. ***Gonzalez***, ***supra***. However, we conclude that the admission of Hannon's initial non-***Mirandized*** statement was harmless error where Hannon voluntarily admitted he had been driving his car when Trooper Warner first came upon the accident scene and where witness Yannone testified that he saw both Hannon's minor daughter and Hannon in actual physical control of the vehicle during the incident. ***See Commonwealth v. Fay***, 344 A.2d 473 (Pa. 1975) (failure to suppress statements not reversible error where Commonwealth can establish beyond reasonable doubt error was harmless); ***see also***

***Commonwealth v. Henry***, 599 A.2d 1321 (Pa. Super. 1991) (erroneous admission of confession can be constitutionally harmless).[11]

In his next issue, Hannon contends that the trial court improperly granted the Commonwealth's motion to preclude admission of witness Yannone's 2005 summary conviction for violating 34 Pa.C.S. § 906, making a false or fraudulent statement on a report or application to a gaming commission representative.  Hannon claims that the exclusion of this evidence was in error where "Mr. Yannone is the only witness to the alleged crimes" and where the probative value of admitting the evidence (as it relates to Yannone's credibility) outweighs its prejudicial effect.  Appellant's Brief, at 14.

An appellate court's standard of review is well settled:

[T]he admissibility of evidence is within the sound discretion of the trial court and we will not reverse absent an abuse of discretion. . . .  An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Leap***, 2019 PA Super 323, *7 (Pa. Super. filed October 25, 2019) (citations omitted).

Pennsylvania Rule of Evidence 609 states, in pertinent part:

---

[11] We also note that Trooper Warner's failure to issue ***Miranda*** warnings at the scene did not invalidate the incriminating oral statements Hannon made to Trooper Decker at PSP Honesdale after his subsequent receipt of ***Miranda*** warnings.  ***See Commonwealth v Charleston***, 16 A.3d 505 (Pa. Super. 2011).

> **Rule 609. Impeachment by Evidence of a Criminal Conviction**
>
> **(a)** In General. **For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime,** whether by verdict or by plea of guilty or *nolo contendere*, **must be admitted if it involved dishonesty or false statement.**
>
> **(b)** Limit Evidence on Using the Evidence After 10 Years. This **subdivision (b) applies if more than 10 years have passed since the witness's conviction** or release from confinement for it, whichever is later. **Evidence of the conviction is admissible only if:**
>
>> **(1) its probative value substantially outweighs its prejudicial effect; and**
>>
>> **(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(a), (b) (emphasis added). Here, Yannone's conviction involved giving a false statement to gaming authorities, which is clearly a crime falling within the ambit of Rule 609. The conviction, however, was handed down more than 10 prior to Hannon's trial. Thus, pursuant to Rule 609(b), evidence of Yannone's conviction is admissible only if "its probative value substantially outweighs its prejudicial effect[.]" Pa.R.A.P. 609(b)(1).[12]

Instantly, the trial court found the evidence inadmissible where "there was no probative value to outweigh the prejudicial effect [it] would have caused[, t]he conviction [wa]s 14 years old[,] and a violation of the Game

---

[12] There is no dispute that Hannon gave the Commonwealth notice of its intent to use Yannone's prior conviction at trial. *See* Commonwealth's Motion in Limine, 5/9/18, at ¶ 4 ("On May 7, 2018, the Commonwealth received written notice from the [d]efense . . . that it intends to seek introduction at trial of Mr. Yannone's prior conviction for a summary violation of the Game Laws in 2005[.]").

Laws has no relation to the subject matter of [Hannon's] case." Trial Court Opinion, 5/9/19, at 5.

The purpose of Rule 609 is to use crimes involving dishonesty or false statement to attack the credibility of a witness. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247 (Pa. Super. 2014) (en banc); *see also Commonwealth v. Howard*, 823 A.2d 911, 913 (Pa. Super. 2003) (Rule 609 "contemplate[s] the impeachment of a witness through the use of his or her prior convictions."). Thus, the fact that Yannone's gaming-related crime had no subject matter relationship to the crime at hand is irrelevant. However, even though Yannone's conviction did fit within the ambit of Rule 609 as one of dishonesty, we do not find that the trial court abused its discretion in finding it inadmissible under Rule 609(b).

Here, Yannone's testimony supported the Commonwealth's prosecution of Hannon for his crimes, specifically his EWOC, REAP and DUI convictions. Accordingly, it was relevant at trial. Arguably, the evidence of Yannone's prior summary conviction under section 906 was probative of his credibility. However, any probative value was substantially outweighed by the potential for unfair prejudice as Yannone was the only witness that could testify to support the Commonwealth's case with regard to having personally observed Hannon's eleven-year-old daughter and Hannon drive his truck. Thus, we conclude that the trial court's decision to exclude the Rule 609 evidence was not an abuse of discretion. *Leap*, *supra*.

Judgment of sentence affirmed.

Judge Nichols concurs in the result of this Memorandum.

Judge McLaughlin concurs in the result of this Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/19